**CORPUS CHRISTI INDEPENDENT SCHOOL DISTRICT and Dr. Charles Benson, Superintendent of Schools, Appellants,**

v.

**Jacinto PADILLA and Nuvia Leyva Terrell, Appellees.**

**No. 13–85–487–CV.**

Court of Appeals of Texas, Corpus Christi.

March 27, 1986.

Rehearing Denied April 24, 1986.

Shirley Selz, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellants.

Samuel R. Baldwin, Jr., Bruce Fickman, Fickman, Van Os, Wateman, Dean & Moore, Houston, for appellees.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is a case involving competing motions for summary judgment. Suit was brought by appellees, two non-contractual employees of the Corpus Christi Independent School District (CCISD), alleging deprivations of their constitutional and statutory rights by the school district in refusing to allow them a hearing before the Board of Trustees (Board) in which they could complain of the superintendent's denial of their employment grievances. The trial court granted the employees' motion for summary judgment, issued injunctive relief, and denied CCISD's motion. We reverse.

Jacinto Padilla and Nuvia Leyva Terrell were bus drivers for CCISD who initiated grievances pursuant to Board Policy 4237 regarding changes in their work assignments. Appellee Terrell was reassigned to the job of custodian. Appellee Padilla was reassigned to a different bus route which reduced his work hours.

Policy No. 4237 defines the district's employee grievance procedure for full-time classified personnel. It distinguishes three categories of grievances. Type A grievances concern complaints about wages, hours or conditions of work and are informally handled by a "private conference with the party involved." All grievances must go through this initial process. Type C grievances are written complaints about

wages, hours and conditions of work and are determined by the district's superintendent, whose decision is final. Type B grievances are written statements that there has been a violation, misinterpretation, or misapplication of Board policy, regulations, or state regulations. Type B grievances are the only ones that can be appealed to the Board. Padilla filed a Type B grievance, but the superintendent determined his complaint was actually a Type C grievance. Padilla then filed a Type C complaint, as did Terrell. The superintendent met with both employees and, after a hearing, denied both grievances. The employees sought an appeal to the Board, but were refused. It was undisputed that, at every regular meeting of the Board, time was allotted for an open forum at which anyone could address the Board about any matter. The appellees never approached the Board with their grievances during the open forum portion of the Board's meeting.

We note at the outset that fourteenth amendment due process requirements are not an issue in this case. Procedural due process standards are required to be met only in those cases involving interests encompassed by the fourteenth amendment's protection of liberty and property. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). To determine whether a liberty or property interest is involved, we must look to the nature of the interest at stake, *id.* at 570–71, 92 S.Ct. at 2705–06; i.e., "the extent to which an individual will be 'condemned to suffer grievous loss.'" *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

The appellees in this case have no liberty or property interest in bus routes, work schedules, or even in continued employment. *See Roth*, 408 U.S. at 576–77, 92 S.Ct. at 2708–09; *Hillis v. Stephen F. Austin State University*, 665 F.2d 547, 552 (5th Cir.1982). Therefore, they had no constitutional right to the fourteenth amend-

ment's procedural safeguards. *Hillis* at 552.

By their suit, appellees alleged that Policy No. 4237 worked an illegal abridgement of their constitutional right, under Article I, § 27 of the Texas Constitution, to "file a grievance with the authority which has the power to remedy the alleged problem." Article I, § 27 provides: "The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance." The trial court's judgment held Policy No. 4237 unconstitutional, pursuant to this provision, to the extent it denied the employees the right to appeal their grievance over wages, hours, or conditions of work to the Board. The court ordered the Board to permit an employee who desires to orally present an appeal from a denial by the superintendent through a representative of their union if it concerns wages, hours, or conditions of work. Appellants argue the court's order, that appellants must grant employees an appeal to the Board on any grievance concerning wages, hours or conditions of work, is impractical and would severely undermine the functioning of the Board. Appellants contend that there is no constitutional requirement, state or federal, that would demand that the Board convene a hearing on every grievance that employees wish to bring to them.

Appellants complain in their first and third points of error that the trial court erred in granting appellees' motion for summary judgment and denying theirs because Board Policy No. 4237 does not impair any rights encompassed by Article I, § 27, but, in fact, appellees were accorded all rights guaranteed by the Texas and United States Constitutions.

We have discovered only one case addressing the right to petition the government for redress: *Professional Association of College Educators v. El Paso County Community [College] District,* 678 S.W.2d 94 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). In that case, an unincorporated association of college professors filed a written remonstrance, with the Board of Trustees of the college district, which addressed a proposed change in the official policies concerning the tenure of faculty members. The association complained that the college board did not consider, address, make response to, or make an effort to negotiate their complaints, and, thus, violated their rights under Article I, § 27. The Court in *Professional Association* held that there is "no requirement that those trusted with the powers of government must negotiate or even respond to complaints filed by those being governed. But, surely they must stop, look and listen. They must consider the petition, address or remonstrance." 678 S.W.2d at 96. We consider this holding a sound one.

Article I, § 27 assures citizens of an important substantive political right. As noted in the Interpretive Commentary to TEX.CONST. Article I, § 27 (Vernon 1984), the right to petition the government for redress is a fundamental part of the republican form of government with its roots extending back to the Magna Charta. This constitutional guarantee would lose its potency if we were to find that the phrase "those invested with the power of government" meant anyone other than the highest elected official or body of the particular arm of government the citizen has sought to address. This is not to say that this provision does not assure a citizen the right to petition someone in the lower echelons of government (e.g., a superintendent of schools), but a citizen's right to approach an elected official or body cannot be abridged.

As in *Professional Association,* we hold that Article I, § 27 only guarantees citizens access to the government's ear. We hold further that, while the government must "consider" the petition or grievance, it does not have an affirmative duty to provide a grievance procedure for citizens to vent their complaints. While the district's internal grievance procedure

would not allow the appellees access to the Board, the open forum allotted at the end of each board meeting did provide appellees such access. Appellees chose not to take that opportunity. The Board was not required to provide the open forum, but the fact that it did, at least in this instance, certainly afforded appellees all of the access which they are constitutionally guaranteed.

Further, the first amendment to the United States Constitution demands no more than Article I, § 27, of the Texas Constitution. Under the first amendment, a citizen association is assured of the right to "speak freely and petition openly"; but that does not "impose an affirmative obligation on the government to listen" or "respond" to those petitions. *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979). The first amendment does not guarantee that a speech "will persuade or that advocacy will be effective." *Id.*, at 464–65, 99 S.Ct. at 1827–28. Members of the public have no constitutional right to "a government audience for their policy views," nor does the status of public employees give them any special constitutional right "to a voice in the making of policy by their government employer." *Minnesota State Board for Community Colleges v. Minnesota Community College Faculty Association*, 465 U.S. 271, 104 S.Ct. 1058, 1067, 79 L.Ed.2d 299 (1984).

A public employer is also not required by the United States Constitution to establish a grievance procedure or respond to grievances lodged by its employees or their union; however, if a public employer voluntarily establishes a grievance procedure, it cannot discriminate in its administration of that process. *Professional Ass'n of College Educators, TSTA/NEA v. El Paso County Community College District*, 730 F.2d 258, 263 (5th Cir.1984). The requirements of Article I, § 27, that a government body "consider" petitions brought before it, is much more than even federal law requires.

Appellees alleged in their petition that the school district's refusal to allow them a hearing before the Board chilled and violated their first amendment right to freedom of expression and denied them equal protection of the laws. As to their first amendment claim, the open forum before the school board was an opportunity to freely express their views or grievances to the Board. The open forum satisfied the requirements of Article I, § 27; therefore, appellees cannot complain of an infringement of their first amendment rights. As to their fourteenth amendment claim, it is undisputed that anyone, whether a member of the general public or an employee of the district, may address the Board during the open forum. We fail to see in what way they were denied equal protection of the laws. The school board's distinct treatment of Type B and C grievances has a rational basis in the desire to only burden the Board with hearing disputes requiring a determination of policy.

By their fourth, fifth and sixth points of error, appellants complain that the trial court erred in granting appellees' summary judgment and in denying theirs, based upon the trial court's ruling that Board Policy No. 4237 infringes on the rights of public employees, pursuant to TEX.REV. CIV.STAT.ANN. art. 5154c, § 6 (Vernon 1971). Article 5154c, § 6 provides: "The provisions of this Act shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or conditions of work individually or through a representative that does not claim the right to strike." This provision is a part of a statutory scheme commonly known as "right-to-work" laws.

Appellees alleged at trial that the Board's policy violated Article 5154c, § 6, because that provision requires that someone in authority hear the grievance. According to appellees, only elected public officials can remedy the grievance and they must meet with public employees to hear their grievances concerning wages, hours of work and conditions of work. Appellees contend that the superintendent is not a public employer or public official, and the

superintendent is not authorized by law to determine wages, hours and conditions.

Appellants' challenge basically involves two questions: 1) what procedural standards are required by Article 5154c, § 6, in order to present a grievance; and 2) to whom does Article 5154c, § 6, require a grievance to be presented.

It has already been established that, in the instant case, Board Policy No. 4237 did not infringe upon any of appellees' constitutionally protected rights, and, therefore, none of the standards for formal due process proceedings are applicable. However, Article 5154c, § 6 obviously is applicable in this case, and the question remains as to what procedural standards are required for the presentation of grievances within the meaning of this provision. Appellants argue that Article 5154c, § 6 does not place any affirmative duty upon them to establish a procedure in which employees may "present grievances."

It has been held that this provision allows a public employee to present a grievance through a representative which may be, but is not limited to, a member of a labor union, *Corpus Christi American Federation of Teachers v. Corpus Christi Independent School District*, 572 S.W.2d 663, 665 (Tex.1978); or an attorney, *Sayre v. Mullins*, 681 S.W.2d 25, 28 (Tex.1984). In addition, the phrase "wages, hours of work and conditions of work" has been broadly construed so that seemingly any topic that is work-related may be the subject of a grievance. *Corpus Christi American Federation of Teachers*, 572 S.W.2d at 664; *see also* Op.Tex.Att'y Gen. No. JM–177 (1984). However, no court in this state has considered what constitutes "presentment." Does presentment encompass any of the formalities of a due process hearing, or is it more akin to an informal airing of one's complaints?

In determining this question, we look for guidance to *Beverly v. City of Dallas*, 292 S.W.2d 172 (Tex.Civ.App.—El Paso 1956, writ ref'd n.r.e.). That case involved a suit by a union against a city to declare invalid an ordinance which prohibited the forma-

tion of unions. The court drew an important distinction between presentment of a grievance and collective bargaining. The court stated:

> The presentation of a grievance is in effect a *unilateral procedure*, whereas a contract or agreement resulting from collective bargaining must of necessity be a bilateral procedure culminating in a meeting of the minds involved and binding the parties to the agreement. The *presentation of a grievance is simply what the words imply, and no more,* ... so it is clear that the statute carefully prohibits striking and collective bargaining, but does permit the presentation of grievances, a unilateral proceeding resulting in no loss of sovereignty by the municipality.

A hearing at which the public employer must hear evidence, determine facts and respond to complaints is clearly more analogous to the collective bargaining procedure distinguished by the court in *Beverly* with its bilateral nature and conclusive result.

A similar situation to the one in this case was considered by the Commission of Education in *Nors v. Gholson Independent School District*, Docket No. 137–R1b–783 (State Commissioner of Education 1984), and while not authoritative, it is helpful on this issue. *See Jackson v. Waco Independent School District*, 629 S.W.2d 201, 204 (Tex.App.—Waco 1982, writ ref'd n.r.e.). That proceeding was brought by a teacher whose contract had not been renewed by the Board of Trustees and who had requested a hearing before that Board regarding her nonrenewal. The Commission noted that no legally protected rights were involved in the matter. An issue in the decision was whether Article 5154c, § 6 entitled the teacher to a hearing as a matter of law. The Commission noted that the statute does not speak to hearings in the legal sense and that such "an interpretation ... would require school districts and other governmental subdivisions to convene hearings on the request of employees no matter how absurd, frivolous, or unin-

formative their requests." *Nors*, at 9. Considering the unilateral nature of "presentment," the Commission ruled that the Board had not violated art. 5154c, § 6 by refusing to convene a hearing at the teacher's request. We consider the Commissioners' concern regarding the overwhelming burden such a requirement would place on local school boards a valid one. Appellants complain that the trial court's order would seriously undermine the Board's ability to function.

 We interpret article 5154c, § 6 to ensure only that public employees have access to those in a position of authority in order to air their grievances. The requirements of this provision, like the requirements of Article I, § 27 of the Constitution, were satisfied by the Board's allotment of an open forum at its Board meetings during which the appellees had an opportunity to present their grievances to the Board. We hold that Article 5154c, § 6 requires no more than what the appellees had the opportunity to exercise.

In addition, appellees were accorded even more than the statute demands because, unlike the constitutional provision, article 5154c, § 6 does not require that employees present their grievances to the highest elected officials of the school district. Article 5154c, § 6 does not provide to whom public employees have a right to present their grievances.

Tex.Att'y Gen.Op. No. H–422 (1974) is persuasive on the question of to whom such a grievance must be presented. In that opinion, the Attorney General was asked for his opinion as to the extent of the duty of public officials to meet with public employees or their representatives to discuss grievances. The Attorney General opined that "(h)aving the right to present grievances necessarily implies that *someone in a position of authority is required to hear them* [grievances] even though he is under no legal compulsion to take any action to rectify them." (Emphasis added.) We have found nothing that suggests that the presentation of grievances envisioned

by article 5154c, § 6 must be made to the Board.

The appellees' grievances were defined by the superintendent as Type C grievances pursuant to Board Policy No. 4327.-1c, which are defined as "written complaints regarding wages, hours, or conditions of work." Further, Board Policy No. 4237.4 provides that the superintendent, or an appointed hearing officer, will consider and decide each Type C grievance and that such decisions are final. The uncontradicted affidavit of the superintendent attached to appellants' motion for summary judgment states that appellee Padilla filed a Type C grievance on March 17, 1983, and, on May 2, 1983, the superintendent denied the grievance in a letter to Padilla's representative. The superintendent heard appellee Terrell's Type C grievance on January 13, 1984, and denied it in a written letter on January 16, 1984.

 According to Board Policy 2100–2110, the Superintendent of Schools is the chief executive officer of the Board of Trustees and the administrative head of all divisions and departments of the school system. The Board was empowered to delegate this authority to the superintendent pursuant to TEX.EDUC.CODE ANN., Sections 23.26(b) and (d) (Vernon 1972). In this case, the superintendent is obviously someone in a position of authority able to remedy the appellees' grievances. We hold that the procedure followed in this instance satisfied the requirements of Article 5154c, § 6. Appellants' fourth, fifth and sixth points of error are sustained.

In their motion, appellees based their entitlement to a summary judgment on appellants' refusal to allow them "to grieve" to the Board regarding the superintendent's denial of their grievance. No summary judgment evidence accompanied the motion, yet it was granted. Appellants also submitted a motion for summary judgment along with the detailed affidavit of the superintendent with copies of the relevant correspondence and Board policies. Appellees did not controvert any of the facts contained in the affidavit or attachments.

■ In a motion for summary judgment, the movant has the burden to show there is no genuine issue of material fact. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548 (Tex.1985). The movant must establish entitlement to judgment as a matter of law, and the courts will indulge all reasonable inferences in favor of the non-movant, with all doubts resolved against the movant. *Id.* at 548–49. In addition, pleadings do not constitute summary judgment proof. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

■ Appellees' summary judgment evidence is deficient as it is nonexistent. Considering appellants' uncontroverted summary judgment evidence and the legal questions involved, appellants were entitled to judgment as a matter of law. The trial court also erred in granting appellees' motion for summary judgment and in denying appellants'. Points of error one and three are sustained.

The parties have now filed a joint agreed motion to reverse and render the judgment of the trial court and grant appellants' motion for summary judgment declaring that Board Policy No. 4237 is not violative of Article I, § 27 of the Texas Constitution or Article 5154c, § 6. We agree that the motion should be granted. It is so ordered. The injunction is dissolved and all costs are adjudged against appellees.

The trial court's judgment granting appellees' motion for summary judgment is REVERSED, and it is hereby RENDERED that appellants' motion for summary judgment is granted.

DORSEY, J., concurs.

DORSEY, Justice, concurring.

While I concur in the result reached by the majority, I feel in view of the Joint Motion to Reverse and Render Judgment that the opinion addressing the merits of the appeal is advisory.

Appellants filed this appeal from a summary judgment rendered September 3, 1985. Although the appellants filed a very learned brief, appellees filed no brief in response. On the day prior to the submission of the case, the parties filed a joint motion to reverse and render judgment in which the appellees agreed that the appellants' motion for summary judgment should have been granted by the trial court. The relief requested by both parties was that this Court reverse and render judgment or, in the alternative, reverse and remand to the trial court with instructions for that court to render judgment for the appellants. Accompanying the joint motion and filed the day before submission was a letter from counsel for the appellee requesting our clerk to advise the Court that the case need not be submitted in light of the parties' joint motion. Although counsel for the appellants appeared at submission and argued, counsel for the appellee did not.

As this Court stated in a per curiam opinion in *Scholl v. Firemen's and Policemen's Civil Service Commission*, 520 S.W.2d 470 (Tex.Civ.App.—Corpus Christi 1975, no writ), an actual controversy is necessary for the existence of appellate jurisdiction; where no controversy exists this Court is without the power to render an opinion as such an opinion would be nothing more than advisory. The Texas Supreme Court has repeatedly held that the Texas Constitution does not grant the judiciary the power to render advisory opinions. *Fireman's Insurance Co. of Newark, New Jersey v. Burch*, 442 S.W.2d 331 (Tex.1968); *United Services Life Insurance Co. v. Delaney*, 396 S.W.2d 855 (Tex. 1965); *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641 (1933).

In view of the agreement of the parties as manifested in their joint motion, I would either reverse and render without opinion or remand. There is no necessity to reach the merits, which involve the constitutionality of the grievance procedure of a public entity, in the absence of an issue demanding decision. Further, as the learned trial judge below, in holding the ordinance to be invalid as contrary to constitution and statute, had the benefit of legal authorities

from both parties and we do not, I am reluctant to hold that he erred in the absence of briefing and argument in support of his judgment. I, therefore, respectfully concur in the judgment of the Court.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

Appellees have filed a motion for rehearing complaining that our original opinion should not have been issued because the case had been settled. Instead, they argue, the appeal should have been disposed of "on the basis of the agreement signed by all parties and filed with the clerk prior to submission."

■ The motion, filed one day before this Court had set the case for submission, was not a settlement. Nowhere does it state as much. The motion stated:

> Under the facts of this case, Appellees agree that the Motion for Summary Judgment filed by CCISD and its superintendent *was supported by proper interpretation of Article I, § 27 and by Article 5154c Sec. 6, and by proper summary judgment evidence. Appellees agree that the Appellants' Motion for Summary Judgment should have been granted by the trial court.* (Emphasis supplied.)

The prayer of the Motion read in part as follows:

> WHEREFORE, ... Appellants, ... and ... Appellees, request the Court, pursuant to Rule 387a, Texas Rules of Civil Procedure, to:
>
> (1) Reverse the judgment of the trial court;
>
> (2) *Render judgment declaring that neither Article I, § 27 of the Texas Constitution nor Tex.Rev.Civ.Stat.Ann. art. 5154c Sec. 6 requires the Board of Trustees to grant a hearing on Appellees' grievances regarding wages, hours of work, or conditions of work, and that, under the facts of this case, CCISD Board Policy No. 4237 does not*

*violate Article I, § 27 or Article 5154c Sec. 6....* (Emphasis supplied.)

Our opinion was not advisory. It is in accord with the parties' motion, which was granted in the opinion. The opinion demonstrates exactly what the parties asked us to do in reversing and rendering the trial court's judgment. In doing so, we explained our reasons why the motion could be granted and the judgment should be reversed and rendered. The trial court was entitled to as much.

Neither the appeal nor the motion had been disposed of before submission. It was clearly within our discretion to issue an opinion in the case. TEX.R.CIV.P. 387a(d) (Vernon 1985); TEX.R.CIV.P. 452 (Vernon 1985).

The motion for hearing is overruled.