OPIC v. TAIP 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-93-054-CV




OFFICE OF PUBLIC INSURANCE COUNSEL


AND STATE BOARD OF INSURANCE,



 APPELLANTS


vs.





TEXAS AUTOMOBILE INSURANCE PLAN, ET AL.,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 92-09771, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 





 The State Board of Insurance (the "Board") and the Office of Public Insurance
Counsel ("OPIC") appeal an adverse summary judgment rendered in favor of the Texas
Automobile Insurance Plan ("TAIP"), the administrative agency charged with operating the
assigned risk plan for providing motor vehicle liability insurance in Texas. (1) The present dispute
requires us to decide which entity--the Board or TAIP--has the authority to amend the rules that
govern the assigned risk plan for apportioning coverage of high risk applicants among insurance
companies providing automobile liability insurance in the state. In answering that question we
must consider the constitutionality of the statute that creates the assigned risk insurance plan. We
will affirm the district-court judgment.


BACKGROUND


 An assigned risk insurance plan was established in 1951 as part of the Texas Motor
Vehicle Safety-Responsibility Act, which was enacted to address the problem of uninsured
motorists. Tex. Rev. Civ. Stat. Ann. art. 6701h, § 35 (West Supp. 1993) ("Section 35"). (2) The
Safety-Responsibility Act requires all motorists to show proof of financial responsibility;
compliance typically involves the purchase of an automobile liability insurance policy. As part
of this scheme, the legislature enacted a plan to compel insurance carriers to provide liability
coverage to those considered too high a risk to obtain insurance in the regular manner. 

 The statute authorizes insurance carriers to create an administrative agency to plan
for the equitable apportionment of high risk insureds among the insurance companies doing
business in the state; the statute also gives insurance companies the authority to make "necessary
reasonable rules" for the operation of the assigned risk plan. These rules must be approved by
the Board. The Texas Automobile Insurance Plan is the agency established to operate the assigned
risk plan; the rules governing the plan are contained in the Automobile Insurance Plan for the
State of Texas, a fifteen-page portion of the Texas Automobile Manual governing car insurance.

 Once the Board gave its imprimatur to the initial automobile insurance plan rules
in 1952, all insurance companies issuing automobile liability policies in the state have been
required to participate. (3) The number of high risk policies assigned to an insurance company
during a year is based on the amount of business it conducted within the state during the previous
year. The legislature created an independent Office of Public Insurance Counsel in 1991 to
represent the interests of insurance consumers, Tex. Ins. Code Ann. art. 1.35A (West Supp.
1993); OPIC replaced the Board's division of consumer protection. The present controversy arose
in 1992 when OPIC sought to amend the plan rules regarding TAIP's governing committee and
its amendment procedures. The rules at issue in this appeal are Rule 8.1, which creates a
governing committee composed of ten insurance company representatives, and Rule 8.5, which
establishes a four-step process for amending the plan rules: (1) approval by the governing
committee, (2) notice to TAIP members, (3) approval by TAIP members, and (4) approval by the
Board. OPIC requested a governing committee of eight non-subscribers and three subscribers
(insurers). TAIP proposed an amendment adding six non-subscribers to the ten subscribers, which
the Board denied. Without TAIP's concurrence, the Board adopted Order No. 59722-B, ordering
a governing committee composed of nine non-subscribers and five subscribers and changing the
four-step procedure for amending plan rules. We note that this dispute over public representation
has now been resolved by legislation dictating the membership of the governing committee
effective September 1, 1993. (4)

 TAIP sought a declaratory judgment asking the district court to enjoin and
invalidate the Board's order. OPIC and the Board intervened. In granting TAIP's summary-judgment motion, the district court enjoined enforcement of Board Order No. 59722-B and held
the order invalid because TAIP, not the Board, is given statutory authority to make and to amend
plan rules. The court further declared that Section 35 is constitutional, that TAIP's procedure for
amending its rules does not violate the statute or the constitution, and that Insurance Code article
1.35C, relating to public representation on advisory bodies, does not apply to TAIP's governing
committee.

 On appeal, the Board brings two points of error, complaining of the district court's
summary judgment in favor of TAIP and its failure to grant summary judgment in favor of
appellants. In its own points of error, OPIC more specifically complains that the court erred in
holding that TAIP, not the Board, has authority to propose amendments to the plan rules; OPIC
also complains that the court issued an advisory opinion in ruling that article 1.35C of the
Insurance Code is not applicable to the governing committee of TAIP. TAIP brings two cross-points challenging the validity of Board Order No. 59722-B.



CONSTITUTIONALITY AND VALIDITY OF SECTION 35


 In its first point of error, OPIC challenges the district court's ruling "that TAIP,
not the Board, has the ultimate approval authority over proposed rule amendments." This point
of error attacks a holding that the district court did not make. In its final summary judgment, the
court holds that Section 35 "authorizes insurance company subscribers of TAIP, and not the State
Board of Insurance to make and to amend TAIP Plan Rules, including establishing the composition
of the Governing Committee." (Emphasis added.) The district court's judgment does not hold
that TAIP has authority or that the Board lacks authority to approve amendments to the rules. 
Rather, the court's judgment addresses the statutory authority given to TAIP to make and to
amend the rules, subject to the Board's approval. Because it presents nothing for our review, we
overrule OPIC's first point of error.

 In its second point of error, OPIC complains that the district court erroneously held
that TAIP, and not consumers, may propose amended rules for the Board's approval. We address
this complaint together with the Board's arguments in its two points of error that the district court
erred in granting TAIP's summary-judgment motion and in not rendering summary judgment for
appellants.

 Section 35 provides in pertinent part:


 

Subject to the provisions of Article 5.10, Texas Insurance Code of 1951, as
amended, insurance companies authorized to issue motor vehicle liability policies
in this state may establish an administrative agency and make necessary reasonable
rules in connection therewith, relative to the formation of a plan and procedure to
provide a means by which insurance may be assigned to an authorized insurance
company for a person required by this Act to show proof of financial responsibility
for the future and who is in good faith entitled to motor vehicle liability insurance
in this state but is unable to secure it through ordinary methods; and may establish
a plan and procedure for the equitable apportionment among such authorized
companies of applicants for such policies and for motor vehicle liability policies,
including, but not limited to voluntary agreement by insurance companies to accept
such assignments.



Tex. Rev. Civ. Stat. Ann. art. 6701h, § 35 (West Supp. 1993) (emphasis added).

 The district court held that this statute authorizes TAIP, not the Board, to make and
amend the plan rules and to establish the composition of the governing committee. Appellants
argue that if the district court correctly interpreted the statutory roles of the two agencies, TAIP
and the Board, the statute unconstitutionally delegates power to TAIP. OPIC takes the position
that the statute as interpreted deprives consumers of their right to petition their government, a
right protected generally by the First Amendment of the federal Constitution and more specifically
by article I, section 27 of the Texas Constitution. (5) OPIC insists that, by delegating authority to
make and amend rules to TAIP and denying consumers the opportunity to propose rules directly
to the Board, the statute infringes citizens' constitutional rights of access "to those invested with
the powers of government." See Tex. Const. art. I, § 27. The Board, on the other hand,
challenges the propriety of the legislature's delegation of authority to 

private entities such as insurance companies. Both appellants argue generally that the statute
violates due-process or equal-protection guarantees and various other state laws.

 We understand OPIC to complain that, by requiring consumers to go through TAIP
to seek rule changes, the statute abridges consumers' rights under the Texas Constitution to
petition the Board, which, by virtue of its authority to approve the plan rules, is the body
"invested with the powers of government" concerning the assigned risk plan of insurance. Under
the district court's construction of Section 35, if OPIC, representing insurance consumers, has a
grievance about the operation of the assigned risk plan, it must address its complaints to TAIP's
governing committee. (6) OPIC, however, wishes to bring its grievances directly to the Board's
attention rather than persuade the insurance companies to amend plan rules. The existing rules
do not permit OPIC to petition the Board directly, and amendments to the existing rules can only
be proposed to the governing committee. Before an amendment can be submitted for the Board's
approval, it must be adopted by a majority of the governing committee and then by the subscribing
insurers. (7)

 In the present situation, OPIC apparently convinced the Board that TAIP's
governing committee should be expanded to include a majority of non-subscribers. To effect this
change in Rule 8.1, the Board also had to change the amendment procedure contained in Rule 8.5. 
This is the substance of Board Order No. 59722-B. The district court declared the order invalid
because the statute gives TAIP, not the Board, the authority to make and to amend plan rules. 
OPIC suggests that the present appeal involves the simple question of who can propose
amendments to the assigned risk plan rules: May consumers petition the Board directly or must
they first submit their grievances to the insurance companies of TAIP? Appellants insist that any
statutory scheme that limits OPIC's right to propose amendments to the Board infringes the
consumers' right of remonstrance guaranteed by article I, section 27 of the Texas Constitution.

 Only two other courts have addressed the rights guaranteed by article I, section 27. 
In Professional Association of College Educators v. El Paso County Community District, 678
S.W.2d 94 (Tex. App.--El Paso 1984, writ ref'd n.r.e.), an association of college professors
complained that the college board did not consider or respond to their remonstrance concerning
changes in the school's tenure policy. After first discussing the history of this valuable right to
seek redress from the government by remonstrance, the court concluded that the teachers'
remonstrance must be considered, but it need not be considered favorably:



We find no requirement that those trusted with the powers of government must
negotiate or even respond to complaints filed by those being governed. But,
surely, they must stop, look and listen. They must consider the petition, address
or remonstrance. If the response, or lack thereof, is not as desired, the remedy
then lies in the ballot box where free and independent people ultimately deal with
those who rule over them.



Id. at 96-97. In Corpus Christi Independent School District v. Padilla, 709 S.W.2d 700 (Tex.
App.--Corpus Christi 1986, no writ), non-contractual employees of a school district complained
of interference with their constitutional right of remonstrance because the district's grievance
procedures did not afford them an appeal to the school board. The appellate court rejected the
complaint. Acknowledging that "a citizen's right to approach an elected official or body cannot
be abridged," the court held that this right "only guarantees access to the government's ear," not
a favorable response. Id. at 704-05. The court held that article I, section 27 did not mandate
creation of a grievance procedure for citizens to vent their complaints to the board; the existing
open forum at the end of each board meeting, while not required, provided adequate access, if not
favorable action. Id. The constitution requires no more.

 The Padilla and Professional Association opinions foreclose OPIC's first challenge
to the constitutionality of Section 35. OPIC ignores the fact that the statute here delegates
authority to two administrative agencies, TAIP and the Board. TAIP, not the Board, is the agency
vested with the power to govern the assigned risk plan and is subject only to the Board's
oversight. See Zuniga v. Allstate Ins. Co., 693 S.W.2d 735, 737 n.2 (Tex. App.--San Antonio
1985, no writ). OPIC had access to the governing body that makes the rules, TAIP; it simply did
not obtain a favorable response to its complaint that TAIP's governing committee is comprised
solely of insurance company representatives. The Texas Constitution guarantees the citizens,
whom OPIC represents, only the right to present their grievances to those invested with authority;
Section 35 authorizes TAIP, not the Board, to propose and amend the rules governing assigned
risk insurance in this state. We agree with the district court's interpretation of Section 35 and
overrule appellants' challenge that the scheme unconstitutionally infringes citizens' right of
remonstrance.

 Appellants also argue that the assigned risk statute violates consumers' First
Amendment rights. The Padilla court noted that a citizen's right to speak freely and petition
openly under the First Amendment "does not guarantee that a speech `will persuade or that
advocacy will be effective.'" Id. at 705 (citations omitted). In finding no federal constitutional
infirmity, the Padilla court further observed that the First Amendment demands no more than
article I, section 27 and imposes no affirmative duty on government to respond to a citizen's
petition. We concur and hold that Section 35 does not infringe consumers and citizens' First
Amendment rights. 

 Appellants neither support their general claims about interference with citizens'
federal due-process or equal-protection rights with authority, nor do they offer any insights into
the manner in which Section 35 or the rules TAIP has promulgated infringe these Fourteenth
Amendment rights. We rely on Padilla's holding that the school district's failure to grant the
complaining employees an appeal to the school board did not chill the complainants' First
Amendment rights, did not invoke due-process concerns, and did not deny the employees equal
protection of the laws. Padilla, 709 S.W.2d at 705. Hence, we overrule appellants' general
federal constitutional challenges to Section 35.

 The Board also argues that the delegation of authority for the assigned risk plan is
illegal because (1) TAIP is composed of private parties, and (2) Section 35 provides insufficient
standards or safeguards to protect against the agency's arbitrary exercise of power. We disagree. 
The delegation of authority to private entities may be lawful if the legislative purpose is
discernible and there is protection against the arbitrary exercise of power. See Kenneth C. Davis,
Treatise on Administrative Law § 3:15(a) (2d ed. 1978 & Supp. 1982). The legislative policy
underlying the assigned risk plan is established by the statute: to provide for the equitable
distribution of high risk applicants among all insurance companies doing business in Texas. The
state regulatory agency, the Board, has power to approve or veto the plan rules of operation and
to determine appropriate rates and policy forms. (8) We conclude that this statutory scheme
establishes reasonable standards to guide TAIP in its rulemaking and sufficient safeguards against
its arbitrary exercise of power. See Railroad Comm'n v. Lone Star Gas Co., 844 S.W.2d 679,
689 (Tex. 1992). Indeed, we conclude that the safeguards are sufficient for a delegation of power
to private parties. See Prudential Property & Casualty Co. v. Insurance Comm'n, 534 F.Supp.
571, 580 (D.S.C. 1982), aff'd, 699 F.2d 690 (4th Cir. 1983). 

 Finally, appellants allege that Section 35 and the plan rules adopted by TAIP and
approved by the Board violate the Insurance Code or section 11 of the Administrative Procedure
and Texas Register Act, Tex. Rev. Civ. Stat. Ann. art. 6252-13a, § 11 (West Supp. 1993). 
Appellants do not, however, support these bare allegations with authority, and we conclude they
are without merit.

 Having considered and rejected all of appellants' challenges to the constitutionality
and validity of the assigned risk insurance statute, we overrule OPIC's second point of error and
those portions of the Board's first and second points of error that attack Section 35 or the plan
rules as interpreted by the district court.



COMPOSITION OF THE GOVERNING COMMITTEE


 The district court granted summary judgment declaring that article 1.35C of the
Insurance Code, requiring public membership on advisory bodies, does not apply to the TAIP
governing committee. (9) Under its two points of error, the Board challenges this holding. In its
third point of error, OPIC complains that the ruling is an impermissible advisory opinion because
the district court found the Board had no jurisdiction to issue Order No. 59722-B. 

 With regard to the Board's challenge, we agree with the district court's
determination that the Board has no authority to appoint the governing committee of TAIP. As
the Board conceded in its brief and at oral argument, if the Board has no such authority, article
1.35C does not apply. We also note that, after September 1, 1993, the composition of the
governing committee will be determined by another portion of the Insurance Code, amended
article 21.81. (10)

 We next consider OPIC's complaint that this portion of the district court's judgment
is advisory. TAIP sought a declaratory judgment, asking the court to determine that the Board's
order exceeded its statutory authority, that the assigned risk statute and the plan rules at issue were
valid, and that article 1.35C did not apply to TAIP's governing committee. The district court's
jurisdiction to respond to the request for declaratory judgment did not depend on the Board's
"jurisdiction," nor did the district court's order address jurisdiction. Rather, the district court
ruled that the Board's order exceeded its statutory authority. The court's statutory interpretation
of Section 35 did not deprive the district court of its authority to interpret Insurance Code article
1.35C as well in this request for declaratory judgment. We overrule OPIC's third point of error
and those portions of the Board's points of error that attack the district court's interpretation of
article 1.35C.



CONCLUSION


 Concluding that the district court did not err in rendering summary judgment in
favor of TAIP, we overrule all of appellants' points of error. Because we conclude there was no
error, we do not reach TAIP's two cross-points on appeal. We affirm the district court's
judgment.




 

 Bea Ann Smith, Justice

[Before Justices Powers, Kidd and B. A. Smith; Justice Powers not participating]

Affirmed

Filed: August 11, 1993

[Publish]

1. [1]  Throughout this opinion, we shall use the term "plan" or "assigned risk plan" when
referring to the scheme for allocating high risk drivers among insurers; we shall use the term
"TAIP" when referring to the administrative agency that oversees the assigned risk plan. 
2. [2]  The 73d Legislature repealed Section 35 and established a successor assigned risk plan,
effective September 1, 1993. Chapter 21 of the Insurance Code is amended to include Article
21.81, establishing the Texas Automobile Insurance Plan Association. 


Sec. 2. Creation of the Association. 


(a) The Texas Automobile Insurance Plan Association is established. The
association is a nonprofit corporate body composed of all authorized
insurers. Each authorized insurer shall be a member of the association and
shall remain a member of the association so long as the association is in
existence as a condition of its authority to write motor vehicle liability
insurance in this state.


(b) The association shall be administered by a governing committee composed
of fifteen members selected as follows:


 (1) eight members who represent the interest of insurers, elected by the
members of the association according to a method determined by such
members;


 (2) five public members nominated by the Office of Public Insurance
Counsel and selected by the commissioner; and


 (3) two members who are licensed local recording agents, as defined by
the plan of operation.


Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 14.03, 1993 Tex. Sess. Law Serv. 2562,
2675 (to be codified at Tex. Ins. Code Ann. art. 21.81).
3. [3]  The pertinent segment of Section 35 provides:


When any such plan has been approved by the State Board of Insurance, all
insurance companies authorized to issue motor vehicle liability policies in the
State of Texas shall subscribe thereto and participate therein.


Tex. Rev. Civ. Stat. Ann. art. 6701h, § 35 (West Supp. 1993).
4. [4]  See supra note 1.
5. [5]  Article I, § 27 provides in pertinent part: "The citizens shall have the right, in a
peaceable manner, to assemble together for their common good; and apply to those invested
with the powers of government for redress of grievance or other purposes, by petition, address
or remonstrance." Tex. Const. art. I, § 27.
6.   Rule 8.1 of the plan rules establishes the authority and the composition of the
governing committee: 


The Plan is administered by a Governing Committee and a Manager. The
Governing Committee (referred to as "The Committee") consists of ten
company members. Two company members shall be selected by each of the
following:


 American Insurance Association

 Alliance of American Insurors

 National Association of Independent Insurers

 Association of Fire and Casualty Companies in Texas;


and two company members shall be selected to represent subscribers who are
not affiliated with any of these associations.
7. [7]  Rule 8.5 sets forth the four-step procedure for amending the rules of the assigned risk
plan:


Proposed amendments to the Plan shall be filed in writing with the Manager, who
shall submit each amendment to the membership of the Committee prior to the
meeting at which the amendment is to be considered.


Amendments to the Plan become effective when all of the following conditions
are met:


A. It must be approved by a majority of the Committee members present and
voting, with a quorum present.


B. After approval by the Committee, notice of any proposed amendment shall be
mailed to the subscribers prior to the date fixed for voting thereon.


C. Ballots may be cast by mail or at the annual meeting, at the option of he
Committee. An amendment is approved by the subscribers unless expressly
disapproved by (a) ten percent (10%) or more of all the subscribers writing
direct automobile liability insurance in Texas, if such dissenting subscribers
write at least twenty percent (20%) of the net direct automobile liability
premiums in Texas, or (b) twenty percent (20%) or more of the subscribers
writing direct automobile liability insurance in Texas, irrespective of the
amount of such premiums written by the dissenting subscribers.


D. After approval by the Committee and the subscribers, an amendment to the
Plan shall be filed with the State Board of Insurance for approval.
8.   Section 35 gives the Board authority to set rates and approve forms, in addition to
approving the rules of operation: 


The State Board of Insurance, in addition to the provisions prescribed by
Subchapter A, Chapter 5, Texas Insurance Code of 1951, as amended, may
determine, fix, prescribe, promulgate, change, and amend rates or minimum
premiums normally applicable to a risk so as to apply to any and every
assignment such rates and minimum premiums as are commensurate with the
greater hazard of the risk, considering in connection therewith the
experience, physical or other conditions or such risk of the person or
municipality applying for insurance under any such plan.
9.   [9]  This article provides:


At least one-half of the membership of each advisory body appointed by the
board or the commissioner, other than an advisory body whose membership is
determined by this code or by another law relating to the business of insurance
in this state, must represent the general public.


Tex. Ins. Code Ann. art. 1.35C (West Supp. 1993).
10.   See supra note 1.