NUMBER 13-07-00744-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


MELODY YARBROUGH, Appellant,


v.
 


TEXAS A&M UNIVERSITY - KINGSVILLE, Appellee.

 


On appeal from the 105th District Court 


of Kleberg County, Texas.


 


O P I N I O N



Before Chief Justice Valdez and Justices Rodriguez and Benavides 


Opinion by Justice Rodriguez



 This appeal arises from a lawsuit filed by a professor seeking a declaration that her
university employer prevented her from exercising her right to file a grievance regarding
a negative employment evaluation. Appellant Melody Yarbrough challenges the trial
court's order denying her motion for summary judgment and granting summary judgment
in favor of appellee Texas A&M University - Kingsville (TAMUK or the university). By three
issues, Yarbrough complains that the trial court erred in determining, as a matter of law,
that TAMUK had allowed Yarbrough to present her grievance to someone in a position of
authority as required by the government code. See Tex. Gov't Code Ann. § 617.005
(Vernon 2004). We reverse and render in part and reverse and remand in part.

I. BACKGROUND

 Yarbrough is employed by TAMUK as an associate professor in the college of
education. In May 2003, Yarbrough's supervisor, Mike Daniel, presented her with her
annual evaluation, which covered the 2002 calendar year. Yarbrough's evaluation
contained high marks in its numerical rankings portion of the evaluation but listed several
areas needing improvement in the narrative portion. Yarbrough protested the negative
comments in the narrative portion and asked Daniel to reconsider and change her
evaluation. Daniel refused but informed Yarbrough that she was free to write a letter
contesting the negative comments and that the letter would be placed in her file along with
her evaluation. Although Yarbrough sent a letter to Daniel in July 2003 again asking him
to rewrite the narrative portion of her evaluation, Yarbrough did not write a rebuttal letter.

 In the week following her evaluation, Yarbrough approached Fred Litton, dean of the
school of education, regarding her evaluation. She presented Litton with a memo stating
her desire to appeal her evaluation. Like Daniel, Litton informed Yarbrough she could write
a letter to her file rebutting the negative evaluation. Litton also advised Yarbrough to
contact Dalton Bigbee, associate vice president for academic affairs, about her complaint. 
Yarbrough met with Bigbee the same day. As had Daniel and Litton before him, Bigbee
told Yarbrough she could write a rebuttal letter for her file. Bigbee also informed Yarbrough
that the faculty handbook allowed her to present her complaint to the faculty grievance
committee. 

 Yarbrough commenced her appeal to the grievance committee in September 2003,
and the committee set Yarbrough's appeal for hearing on November 19, 2003. However,
in early November 2003, Kay Clayton, provost and vice president for academic affairs, sent
a letter to the grievance committee informing them that they were without authority to hear
Yarbrough's appeal of her negative evaluation. As a result of the letter, the committee
cancelled the hearing. Yarbrough was granted tenure in the spring of 2004.

 In April 2005, Yarbrough filed a lawsuit under chapter 37 of the civil practice and
remedies code, see Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (Vernon 2008),
seeking a declaration that TAMUK violated government code section 617.005 by failing to
afford her "a minimally adequate opportunity to present her grievance . . . ." See Tex.
Gov't Code Ann. § 617.005 (stating that the code provision regarding collective bargaining
for state employees "does not impair the right of public employees to present grievances
concerning their wages, hours of employment, or conditions of work"). Both Yarbrough and
TAMUK filed motions for summary judgment. The trial court entered judgment denying
Yarbrough's motion, granting TAMUK's, and ordering that Yarbrough take nothing by her
lawsuit. (1) This appeal ensued.

II. STANDARD OF REVIEW

 Although a party generally cannot appeal the denial of a motion for summary
judgment, when both sides move for summary judgment and the trial court grants one
motion and denies the other, the unsuccessful party may appeal both the granting of the
prevailing party's motion and the denial of its own. Tex. Mun. Power Agency v. Pub. Util.
Comm'n of Tex., 253 S.W.3d 184, 192 (Tex. 2007). "In a motion for summary judgment,
the movant has the burden to show there is no genuine issue of material fact" and must
establish that it is "entitled to judgment as a matter of law." Corpus Christi Indep. Sch. Dist.
v. Padilla, 709 S.W.2d 700, 708 (Tex. App.-Corpus Christi 1986, no writ). The appellate
court should review both sides' summary judgment evidence, determine all questions
presented, and render the judgment the trial court should have rendered. FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). "When a trial court's
order granting summary judgment does not specify the grounds relied upon, the reviewing
court must affirm summary judgment if any of the summary judgment grounds are
meritorious." Id. (citing Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995)).

III. DISCUSSION

 By her first and second issues, Yarbrough complains that the trial court erred in
granting summary judgment in favor of TAMUK on her claim for declaratory relief. (2) 
Specifically, Yarbrough argues TAMUK did not conclusively prove that her claim was moot
or that she was able to present her grievance to a person in authority, thus complying with
section 617.005. In her third issue, Yarbrough contends that the trial court erred in denying
her motion for summary judgment, arguing that she conclusively proved the inverse of
TAMUK's grounds.


A. TAMUK's Motion for Summary Judgment 

 TAMUK moved for summary judgment on two grounds. First, TAMUK argued that
Yarbrough's claims for declaratory relief were moot because she was granted tenure in
spring 2004. Second, TAMUK contended that it complied with section 617.005 because
it did not prevent Yarbrough from accessing persons in positions of authority to present her
grievance.

 1. Mootness

 TAMUK contends that Yarbrough's primary concern regarding her negative
evaluation was the impact it would have on her chances of achieving tenure. TAMUK
argues that because Yarbrough was granted tenure before the filing of this lawsuit, her
claims for declaratory relief regarding her grievance rights are moot. We disagree. 

 It is true that "a declaratory judgment is unavailable unless there is a justiciable
controversy between the parties." Lubbock Prof'l Firefighters v. City of Lubbock, 742
S.W.2d 413, 419 (Tex. App.-Amarillo 1987, writ ref'd n.r.e.); see Allstate Ins. Co. v.
Hallman, 159 S.W.3d 640, 642 (Tex. 2004) (holding that "a case becomes moot if a
controversy ceases to exist" between the parties). However, in her response to TAMUK's
motion for summary judgment, Yarbrough asserted that there still exists an actual
controversy between her and TAMUK; Yarbrough argued that, because the policies
underlying her dispute with TAMUK are still in effect, her right to present her grievances
continues to be violated and could be repeated the next time she has a grievance. Unless
the conduct challenged by an appellant has been discontinued and "there is no reasonable
expectation that the wrong will be repeated," the case is not moot. See Lubbock Prof'l
Firefighters, 742 S.W.2d at 419 (citing U.S. v. W.T. Grant & Co., 345 U.S. 629, 633
(1953)). TAMUK does not dispute that it continues to support the policies challenged by
Yarbrough. Moreover, TAMUK adamantly insists that its actions regarding Yarbrough's
grievance complied with the law--in particular, that Yarbrough's meeting with Bigbee,
despite his inability to remedy her complaint, gave her access to a person in authority and
that TAMUK's rebuttal letter "exclusive remedy" satisfied its obligations under section
617.005. See id. (finding that the wrong was likely to be repeated, especially in light of the
appellee's "vigorous trial and appellate opposition" to the claims of appellants). Based on
the foregoing, we note that TAMUK has taken no steps to discontinue the complained-of
policies, conclude that a repetition of events in this case is likely and, therefore, reject
TAMUK's mootness argument because an actual controversy still exists between the
parties. See Hallman, 159 S.W.3d at 642. Thus, we cannot conclude that this ground
supports the summary judgment entered in favor of TAMUK. 

 2. Compliance with Texas Government Code § 617.005

 In addition to mootness, TAMUK moved for summary judgment on the ground that
its actions with regard to Yarbrough's complaint complied with section 617.005. Following
are the undisputed material facts of this case: Yarbrough received a negative evaluation
from her supervisor, Daniel, in May 2003; Yarbrough disagreed with Daniel's assessment
of her performance; Yarbrough asked Daniel to change the negative narrative portion of
the evaluation to match the positive numerical ranking portion of the evaluation; the
"exclusive remedy" for TAMUK faculty contesting negative evaluations is writing a rebuttal
letter to be placed in the professor's file; Yarbrough did not avail herself of this remedy;
instead, Yarbrough pursued her complaint up the "chain of command" at TAMUK, meeting
first with Litton and then Bigbee; neither Litton nor Bigbee had the power to change
Yarbrough's evaluation; only Daniel had the power to change Yarbrough's evaluation;
Yarbrough appealed her negative evaluation to the faculty grievance committee in
September 2003; the grievance committee set Yarbrough's appeal for a hearing; in
November 2003, TAMUK's provost informed the committee that it had no authority to hear
Yarbrough's appeal and no hearing was held.

 Because the facts are undisputed, the question before us--whether TAMUK's
actions with regard to Yarbrough's grievance, as a matter of law, complied with section
617.005 of the government code--is a legal one. See Padilla, 709 S.W.2d at 708. Section
617.005 states that chapter 617 of the government code, which prohibits public employees
from striking or engaging in collective bargaining, "does not impair the right of public
employees to present grievances concerning their wages, hours of employment, or
conditions of work either individually or through a representative that does not claim the
right to strike." Tex. Gov't Code Ann. § 617.005. 

 At the outset, we note that the case law and other authority interpreting this question
is sparse. In Corpus Christi Independent School District (CCISD) v. Padilla, this Court
addressed a similar, although not identical, situation. 709 S.W.2d 700. Two employees
complained that CCISD had deprived them of their grievance rights as public employees
by denying their request for a hearing before the board of trustees. Id. at 703. The
employees had each received work reassignments and initiated grievances under a board
policy that created three categories of grievances. Id. Under the policy, all grievances
must have gone through the first category, Type A, which was an informal process handled
by private conference with the involved parties. Id. After this initial process, grievances
could be further pursued as either a Type B grievance--which involved a written statement
that there had been a violation of policies or regulations--or a Type C grievance--which
involved a written complaint regarding wages, hours, and conditions of work that was heard
and determined by the CCISD superintendent. Id. Only Type B grievances could be
appealed to the board of trustees. Id. 

 One of the complaining employees filed a Type B grievance, but the superintendent
determined that the grievance fell in the Type C category so both employees then filed
Type C grievances. Id. The superintendent met with both employees, heard their
complaints, and denied both grievances. Id. The employees appealed the
superintendent's denial to the board of trustees, but the board denied their request for a
hearing. Id. At its regular meeting, the board set aside time for an open forum at which
any person could address the board about any matter. Id. The employees did not
approach the board during the open forum to complain of their grievances. Id.

 In Padilla, we held that the government code "ensure[s] only that public employees
have access to those in a position of authority to air their grievances," and the law was
satisfied by the board of trustee's open forum at regular board meetings. Id. at 707; see
Tex. Gov't Code Ann. 617.005; see also Op. Tex. Att'y Gen. No. H-422, at 2 (1974)
(reasoning that a public employee's right to present his grievances, "given as an alternative
to collective bargaining, is of little value if public employers are entitled to refuse to hear
or discuss grievances"). We also held that, because the superintendent was empowered
by the board to remedy employee grievances, the Type C procedure initiated by the
complaining employees also complied with the law. Padilla, 709 S.W.2d at 707.

 TAMUK interprets Padilla to stand for the proposition that, under section 617.005,
a public employer need only provide a forum for the airing of employee grievances. 
TAMUK does not believe it is required to provide employees with access to persons who
can actually remedy the problem complained of in the grievance. Following this logic,
TAMUK argues that the open forum provided by the CCISD board of trustees in Padilla is
analogous to TAMUK's open-door policy; TAMUK contends this policy allows employees
to air their grievances to any member of the university's administration, including the
president. TAMUK asserts that, by failing to pursue her complaint past Bigbee and the
faculty grievance committee, Yarbrough did not fully avail herself of the university's open-door policy, and thus, TAMUK did not deny her access to persons in positions of authority
as required by section 617.005. TAMUK further argues that Yarbrough's meeting with
Bigbee, in itself, satisfied the university's obligation; TAMUK contends that, despite the
undisputed fact that Bigbee did not have the power to alter Yarbrough's negative
evaluation, Bigbee was nonetheless a person in a position of authority. See id. 

 However, TAMUK's argument ignores two critical uncontested facts: (1) the
university's "exclusive remedy" for employees complaining of negative evaluations is to
write a rebuttal letter to be placed in their files; and (2) Daniel, the supervisor who drafted
the negative comments in the narrative portion of Yarbrough's evaluation, was the only
person at the university empowered to change Yarbrough's evaluation. We do not believe
that the open forum provided by the CCISD board of trustees in Padilla--through which
aggrieved employees could present their complaints to a body that was empowered to take
action to remedy the problem--is sufficiently analogous to warrant our endorsement of
TAMUK's open-door policy, which, by the university's own admission, does not provide
employees access to persons who can fix the underlying cause of their grievances. 
Moreover, we refuse to extend our holding in Padilla to the facts of this case because the
complaining employees in Padilla had direct access to a person "in a position of authority
able to remedy" their grievance, the superintendent. Id. (emphasis added). Here,
TAMUK's argument relies heavily on Yarbrough's access to two particular persons, Bigbee
and Daniel. The first, Bigbee, had no power to rectify the situation giving rise to
Yarbrough's grievance. The other, Daniel, was the very person who wrote the negative
evaluation about which Yarbrough was complaining; surely, a public employer's obligations
under section 617.005 are not satisfied by a policy that vests sole discretion to remedy
grievances in the hands of the supervisor who created the underlying situation giving rise
to the complaint. (3) We will not limit a public employer's duty under section 617.005 to
merely providing a sounding board for employee venting; to do so without also requiring
that the person in authority be able to remedy the complaint would render an employee's
grievance rights meaningless. See Op. Tex. Att'y Gen. No. H-422, at 2.

 Accordingly, we conclude that a public employer complies with section 617.005 so
long as it allows its employees to access persons in positions of authority to present their
grievances. See id. ("Having the right to present grievances necessarily implies that
someone in a position of authority is required to hear them . . . ."). However, it is not
enough that the approached person have a generally authoritative title--such as associate
vice president for academic affairs. Rather, the person to whom the employee grieves
must have the authority to actually correct the complained-of wrong. By our decision today
we do not conclude that the person to whom the grievance is presented is under any sort
of legal compulsion to take action. See id. Neither are we mandating that, as was
requested by the employees in Padilla, public employers hold hearings for every grievance
brought before them. See Padilla, 709 S.W.2d at 707 (agreeing that a requirement that
the board of trustees hold an evidentiary hearing for every employee complaint would place
an "overwhelming burden" on the board). We merely conclude that the person hearing the
employee's grievance must have the power to remedy the complaint if it is ultimately
determined that is the correct course of action. Based on the foregoing, we cannot
conclude that TAMUK's actions with regard to Yarbrough's grievance complied with section
617.005, and thus, its actions cannot provide a basis for granting TAMUK's motion for
summary judgment.

 3. Conclusion

 Having rejected both grounds on which TAMUK moved for summary judgment, we
conclude the trial court erred in granting summary judgment in favor of TAMUK. See Doe,
915 S.W.2d at 473 (holding that reversal of a granted motion for summary judgment
requires proof that none of the movant's grounds were meritorious). We sustain
Yarbrough's first and second issues. 

B. Yarbrough's Motion for Summary Judgment

 Yarbrough moved for summary judgment on the ground that TAMUK denied her
access to a person in a position of authority who could remedy her grievance regarding her
negative evaluation. As previously discussed, the material facts of this case are
undisputed, and we interpret the law to require that a public employer allow potentially
wronged employees to present their complaints to a person in a position of authority who
is able to remedy the grievance. See Padilla, 709 S.W.2d at 707. Here, the uncontested
facts establish that, although Yarbrough attempted to appeal her evaluation up the chain
of command to Bigbee, Bigbee did not have the authority to direct Daniel to change her
evaluation or change her evaluation himself. Rather, the evidence shows that Daniel was
the only person at TAMUK vested with the power to change Yarbrough's evaluation and
that Yarbrough's "exclusive remedy" was to write a letter to her file rebutting Daniel's
negative narrative in her evaluation. 

 We conclude that by creating an "exclusive remedy" that put Yarbrough's grievance
squarely back into the hands of the person who wrote her complained-of evaluation,
TAMUK, as a matter of law, failed to comply with section 617.005. Its actions impaired
Yarbrough's right to present her grievance to a person with the authority to remedy her
complaint. Therefore, the trial court erred when it denied Yarbrough's motion for summary
judgment. Yarbrough's motion should have been granted because the evidence
conclusively established that neither her meeting with Bigbee nor the "exclusive remedy"
of writing a rebuttal letter satisfied TAMUK's obligation to provide Yarbrough with access
to a person in authority who could remedy her grievance. See FM Props. Operating Co.,
22 S.W.3d at 872 (directing this Court to consider the summary judgment evidence,
determine the questions presented, and render the judgment that should have been
rendered by the trial court). Yarbrough's third issue is sustained. 

IV. CONCLUSION

 The judgment of the trial court granting TAMUK's motion for summary judgment and
denying Yarbrough's is reversed. We render judgment granting Yarbrough's motion for
summary judgment and enter the following requested declaratory relief: (4) that Texas A&M
University, Kingsville impaired Yarbrough's right to present her grievance under section
617.005 of the Texas Government Code by offering Yarbrough the "exclusive remedy" of
rebutting her evaluation to the very supervisor who crafted the negative narrative in the first
place; this policy denied Yarbrough access to a person in a position of authority who could
remedy her grievance and, thus, deprived her of her statutory rights under section 617.005. 
See Tex. Gov't Code Ann. § 617.005. We remand the case to the trial court for entry of
attorneys' fees and costs pursuant to the civil practice and remedies code. See Tex. Civ.
Prac. & Rem. Code Ann. § 37.009.

 


 NELDA V. RODRIGUEZ

 Justice


Opinion delivered and filed this

24th day of September, 2009.
1. The trial court did not specify the grounds on which it granted TAMUK's motion for summary
judgment.
2. Because the same law applies to Yarbrough's first and second issues, we will analyze them together
for purpose of this appeal. See Tex. R. App. P. 47.1.
3. See, e.g., Tex. Educ. Code Ann. § 11.171(a) (Westlaw current through 2009 1st C.S.) (stating that
public school teachers must be able to take their grievances of harassment or other violations of law to a
"supervisor other than the supervisor against whom the employee intends to report the grievance"); Univ. of
Tex. Sys. Rules & Regulations of the Bd. of Regents, Rule 30602 §§ 5-8, http://dox.utdallas.edu/policy1187
(last visited Aug. 27, 2009) (providing for the appeal of unsatisfactory decisions of direct supervisors to other
persons empowered to make a decision on the matter); McLennan Community College Employee Grievance
Procedure, http://www.mclennan.edu/publications/phandbook/docs/b-17.pdf (last visited Aug. 27, 2009)
(same).
4. See Lubbock Prof'l Firefighters v. City of Lubbock, 742 S.W.2d 413, 419-20 (Tex. App.-Amarillo
1987, writ ref'd n.r.e) (reversing the trial court's denial of and rendering the declaratory relief requested by
appellants).