OFFICE OF PUBLIC INSURANCE
COUNSEL and State Board of
Insurance, Appellants,

v.

TEXAS AUTOMOBILE INSURANCE
PLAN, et al., Appellees.

No. 3–93–054–CV.

Court of Appeals of Texas,
Austin.

Aug. 11, 1993.

Rehearing Overruled Sept. 15, 1993.

D.J. Powers, Office of Public Ins. Counsel, Austin, for Office of Public Ins. Counsel.

Dan Morales, Atty. Gen., Elizabeth M. Marsh, Asst. Atty. Gen., Austin, for State Bd. of Ins.

Phyllis Pollard, Scott, Douglass & Luton, L.L.P., Austin, for appellees.

Before POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The State Board of Insurance (the "Board") and the Office of Public Insurance Counsel ("OPIC") appeal an adverse summary judgment rendered in favor of the Texas Automobile Insurance Plan ("TAIP"), the administrative agency charged with operating the assigned risk plan for providing motor vehicle liability insurance in Texas.[1] The present dispute requires us to decide which entity—the Board or TAIP—has the authority to amend the rules that govern the assigned risk plan for apportioning coverage of high risk applicants among insurance companies providing automobile liability insurance in the state. In answering that question we must consider the constitutionality of the statute that creates the assigned risk insurance plan. We will affirm the district-court judgment.

## BACKGROUND

An assigned risk insurance plan was established in 1951 as part of the Texas Motor Vehicle Safety–Responsibility Act, which was enacted to address the problem of uninsured

---

1. Throughout this opinion, we shall use the term "plan" or "assigned risk plan" when referring to the scheme for allocating high risk drivers among insurers; we shall use the term "TAIP" when referring to the administrative agency that oversees the assigned risk plan.

motorists. Tex.Rev.Civ.Stat.Ann. art. 6701h, § 35 (West Supp.1993) ("Section 35").[2] The Safety–Responsibility Act requires all motorists to show proof of financial responsibility; compliance typically involves the purchase of an automobile liability insurance policy. As part of this scheme, the legislature enacted a plan to compel insurance carriers to provide liability coverage to those considered too high a risk to obtain insurance in the regular manner.

The statute authorizes insurance carriers to create an administrative agency to plan for the equitable apportionment of high risk insureds among the insurance companies doing business in the state; the statute also gives insurance companies the authority to make "necessary reasonable rules" for the operation of the assigned risk plan. These rules must be approved by the Board. The Texas Automobile Insurance Plan is the agency established to operate the assigned risk plan; the rules governing the plan are contained in the *Automobile Insurance Plan for the State of Texas,* a fifteen-page portion of the Texas Automobile Manual governing car insurance.

Once the Board gave its imprimatur to the initial automobile insurance plan rules in 1952, all rate regulated insurance companies issuing automobile liability policies in the state have been required to participate.[3] The number of high risk policies assigned to an insurance company during a year is based on the amount of business it conducted within the state during the previous year. The legislature created an independent Office of Public Insurance Counsel in 1991 to represent the interests of insurance consumers, Tex.Ins.Code Ann. art. 1.35A (West Supp. 1993); OPIC replaced the Board's division of consumer protection. The present controversy arose in 1992 when OPIC sought to amend the plan rules regarding TAIP's governing committee and its amendment procedures. The rules at issue in this appeal are Rule 8.1, which creates a governing committee composed of ten insurance company representatives, and Rule 8.5, which establishes a four-step process for amending the plan rules: (1) approval by the governing committee, (2) notice to TAIP members, (3) approval by TAIP members, and (4) approval by the Board. OPIC requested a governing committee of eight non-subscribers and three subscribers (insurers). TAIP proposed an amendment adding six non-subscribers to the ten subscribers, which the Board denied. Without TAIP's concurrence, the Board adopted Order No. 59722–B, ordering a governing committee composed of nine non-subscribers and five subscribers and changing the four-step procedure for amending plan rules. We note that this dispute over public representation has now been resolved by legislation dictating the membership of the governing committee effective September 1, 1993.[4]

TAIP sought a declaratory judgment asking the district court to enjoin and invalidate

2. The 73d Legislature repealed Section 35 and established a successor assigned risk plan, effective September 1, 1993. Chapter 21 of the Insurance Code is amended to include Article 21.81, establishing the Texas Automobile Insurance Plan Association.

> Sec. 2. Creation of the Association.
> (a) The Texas Automobile Insurance Plan Association is established. The association is a nonprofit corporate body composed of all authorized insurers. Each authorized insurer shall be a member of the association and shall remain a member of the association so long as the association is in existence as a condition of its authority to write motor vehicle liability insurance in this state.
> (b) The association shall be administered by a governing committee composed of fifteen members selected as follows:
> (1) eight members who represent the interest of insurers, elected by the members of the

> association according to a method determined by such members;
> (2) five public members nominated by the Office of Public Insurance Counsel and selected by the commissioner; and
> (3) two members who are licensed local recording agents, as defined by the plan of operation.

Act of May 30, 1993, 73d Leg., R.S., ch. 685, § 14.03, 1993 Tex.Sess.Law Serv. 2562, 2675 (to be codified at Tex.Ins.Code Ann. art. 21.81).

3. The pertinent segment of Section 35 provides:

> When any such plan has been approved by the State Board of Insurance, all insurance companies authorized to issue motor vehicle liability policies in the State of Texas shall subscribe thereto and participate therein.

Tex.Rev.Civ.Stat.Ann. art. 6701h, § 35 (West Supp.1993).

4. *See supra* note 1.

the Board's order. OPIC and the Board intervened. In granting TAIP's summary-judgment motion, the district court enjoined enforcement of Board Order No. 59722–B and held the order invalid because TAIP, not the Board, is given statutory authority to make and to amend plan rules. The court further declared that Section 35 is constitutional, that TAIP's procedure for amending its rules does not violate the statute or the constitution, and that Insurance Code article 1.35C, relating to public representation on advisory bodies, does not apply to TAIP's governing committee.

On appeal, the Board brings two points of error, complaining of the district court's summary judgment in favor of TAIP and its failure to grant summary judgment in favor of appellants. In its own points of error, OPIC more specifically complains that the court erred in holding that TAIP, not the Board, has authority to propose amendments to the plan rules; OPIC also complains that the court issued an advisory opinion in ruling that article 1.35C of the Insurance Code is not applicable to the governing committee of TAIP. TAIP brings two cross-points challenging the validity of Board Order No. 59722–B.

## CONSTITUTIONALITY AND VALIDITY OF SECTION 35

In its first point of error, OPIC challenges the district court's ruling "that TAIP, not the Board, has the ultimate approval authority over proposed rule amendments." This point of error attacks a holding that the district court did not make. In its final summary judgment, the court holds that Section 35 "authorizes insurance company subscribers of TAIP, and not the State Board of Insurance *to make and to amend TAIP Plan Rules,* including establishing the composition of the Governing Committee." (Emphasis added.) The district court's judgment does not hold that TAIP has authority or that the Board lacks authority *to approve* amendments to the rules. Rather, the court's judgment addresses the statutory authority given to TAIP *to make and to amend* the rules, subject to the Board's approval. Because it

presents nothing for our review, we overrule OPIC's first point of error.

In its second point of error, OPIC complains that the district court erroneously held that TAIP, and not consumers, may propose amended rules for the Board's approval. We address this complaint together with the Board's arguments in its two points of error that the district court erred in granting TAIP's summary-judgment motion and in not rendering summary judgment for appellants.

Section 35 provides in pertinent part:

Subject to the provisions of Article 5.10, Texas Insurance Code of 1951, as amended, *insurance companies authorized to issue motor vehicle liability policies in this state may establish an administrative agency and make necessary reasonable rules* in connection therewith, relative to the formation of a plan and procedure to provide a means by which insurance may be assigned to an authorized insurance company for a person required by this Act to show proof of financial responsibility for the future and who is in good faith entitled to motor vehicle liability insurance in this state but is unable to secure it through ordinary methods; *and may establish a plan and procedure for the equitable apportionment among such authorized companies of applicants for such policies and for motor vehicle liability policies,* including, but not limited to voluntary agreement by insurance companies to accept such assignments.

Tex.Rev.Civ.Stat.Ann. art. 6701h, § 35 (West Supp.1993) (emphasis added).

The district court held that this statute authorizes TAIP, not the Board, to make and amend the plan rules and to establish the composition of the governing committee. Appellants argue that if the district court correctly interpreted the statutory roles of the two agencies, TAIP and the Board, the statute unconstitutionally delegates power to TAIP. OPIC takes the position that the statute as interpreted deprives consumers of their right to petition their government, a right protected generally by the First Amendment of the federal Constitution and more specifically by article I, section 27 of

the Texas Constitution.[5] OPIC insists that, by delegating authority to make and amend rules to TAIP and denying consumers the opportunity to propose rules directly to the Board, the statute infringes citizens' constitutional rights of access "to those invested with the powers of government." *See* Tex. Const. art. I, § 27. The Board, on the other hand, challenges the propriety of the legislature's delegation of authority to private entities such as insurance companies. Both appellants argue generally that the statute violates due-process or equal-protection guarantees and various other state laws.

We understand OPIC to complain that, by requiring consumers to go through TAIP to seek rule changes, the statute abridges consumers' rights under the Texas Constitution to petition the Board, which, by virtue of its authority to approve the plan rules, is the body "invested with the powers of government" concerning the assigned risk plan of insurance. Under the district court's construction of Section 35, if OPIC, representing insurance consumers, has a grievance about the operation of the assigned risk plan, it must address its complaints to TAIP's governing committee.[6] OPIC, however, wishes to bring its grievances directly to the Board's attention rather than persuade the insurance companies to amend plan rules. The existing rules do not permit OPIC to petition the Board directly, and amendments to the existing rules can only be proposed to the governing committee. Before an amendment can be submitted for the Board's approval, it must be adopted by a majority of the governing committee and then by the subscribing insurers.[7]

In the present situation, OPIC apparently convinced the Board that TAIP's governing committee should be expanded to include a majority of non-subscribers. To effect this change in Rule 8.1, the Board also had to change the amendment procedure contained in Rule 8.5. This is the substance of Board Order No. 59722–B. The district court declared the order invalid because the statute gives TAIP, not the Board, the authority to make and to amend plan rules. OPIC suggests that the present appeal involves the simple question of who can propose amendments to the assigned risk plan rules: May consumers petition the Board directly or must they first submit their grievances to the

5. Article I, § 27 provides in pertinent part: "The citizens shall have the right, in a peaceable manner, to assemble together for their common good; and apply to those invested with the powers of government for redress of grievance or other purposes, by petition, address or remonstrance." Tex. Const. art. I, § 27.

6. Rule 8.1 of the plan rules establishes the authority and the composition of the governing committee:

The Plan is administered by a Governing Committee and a Manager. The Governing Committee (referred to as "The Committee") consists of ten company members. Two company members shall be selected by each of the following:

American Insurance Association
Alliance of American Insurors
National Association of Independent Insurers
Association of Fire and Casualty Companies in Texas;

and two company members shall be selected to represent subscribers who are not affiliated with any of these associations.

7. Rule 8.5 sets forth the four-step procedure for amending the rules of the assigned risk plan:

Proposed amendments to the Plan shall be filed in writing with the Manager, who shall submit each amendment to the membership of the Committee prior to the meeting at which the amendment is to be considered.

Amendments to the Plan become effective when all of the following conditions are met:

A. It must be approved by a majority of the Committee members present and voting, with a quorum present.

B. After approval by the Committee, notice of any proposed amendment shall be mailed to the subscribers prior to the date fixed for voting thereon.

C. Ballots may be cast by mail or at the annual meeting, at the option of the Committee. An amendment is approved by the subscribers unless expressly disapproved by (a) ten percent (10%) or more of all the subscribers writing direct automobile liability insurance in Texas, if such dissenting subscribers write at least twenty percent (20%) of the net direct automobile liability premiums in Texas, or (b) twenty percent (20%) or more of the subscribers writing direct automobile liability insurance in Texas, irrespective of the amount of such premiums written by the dissenting subscribers.

D. After approval by the Committee and the subscribers, an amendment to the Plan shall be filed with the State Board of Insurance for approval.

insurance companies of TAIP? Appellants insist that any statutory scheme that limits OPIC's right to propose amendments to the Board infringes the consumers' right of remonstrance guaranteed by article I, section 27 of the Texas Constitution.

Only two other courts have addressed the rights guaranteed by article I, section 27. In *Professional Association of College Educators v. El Paso County Community District*, 678 S.W.2d 94 (Tex.App.—El Paso 1984, writ ref'd n.r.e.), an association of college professors complained that the college board did not consider or respond to their remonstrance concerning changes in the school's tenure policy. After first discussing the history of this valuable right to seek redress from the government by remonstrance, the court concluded that the teachers' remonstrance must be considered, but it need not be considered favorably:

> We find no requirement that those trusted with the powers of government must negotiate or even respond to complaints filed by those being governed. But, surely, they must stop, look and listen. They must consider the petition, address or remonstrance. If the response, or lack thereof, is not as desired, the remedy then lies in the ballot box where free and independent people ultimately deal with those who rule over them.

*Id.* at 96–97. In *Corpus Christi Independent School District v. Padilla*, 709 S.W.2d 700 (Tex.App.—Corpus Christi 1986, no writ), non-contractual employees of a school district complained of interference with their constitutional right of remonstrance because the district's grievance procedures did not afford them an appeal to the school board. The appellate court rejected the complaint. Acknowledging that "a citizen's right to approach an elected official or body cannot be abridged," the court held that this right "only guarantees access to the government's ear," not a favorable response. *Id.* at 704–05. The court held that article I, section 27 did not mandate creation of a grievance procedure for citizens to vent their complaints to the board; the existing open forum at the end of each board meeting, while not required, provided adequate access, if not fa-

vorable action. *Id.* The constitution requires no more.

■ The *Padilla* and *Professional Association* opinions foreclose OPIC's first challenge to the constitutionality of Section 35. OPIC ignores the fact that the statute here delegates authority to two administrative agencies, TAIP and the Board. TAIP, not the Board, is the agency vested with the power to govern the assigned risk plan and is subject only to the Board's oversight. *See Zuniga v. Allstate Ins. Co.*, 693 S.W.2d 735, 737 n. 2 (Tex.App.—San Antonio 1985, no writ). OPIC had access to the governing body that makes the rules, TAIP; it simply did not obtain a favorable response to its complaint that TAIP's governing committee is comprised solely of insurance company representatives. The Texas Constitution guarantees the citizens, whom OPIC represents, only the right to present their grievances to those invested with authority; Section 35 authorizes TAIP, not the Board, to propose and amend the rules governing assigned risk insurance in this state. We agree with the district court's interpretation of Section 35 and overrule appellants' challenge that the scheme unconstitutionally infringes citizens' right of remonstrance.

■ Appellants also argue that the assigned risk statute violates consumers' First Amendment rights. The *Padilla* court noted that a citizen's right to speak freely and petition openly under the First Amendment "does not guarantee that a speech 'will persuade or that advocacy will be effective.'" *Id.* at 705 (citations omitted). In finding no federal constitutional infirmity, the *Padilla* court further observed that the First Amendment demands no more than article I, section 27 and imposes no affirmative duty on government to respond to a citizen's petition. We concur and hold that Section 35 does not infringe consumers and citizens' First Amendment rights.

■ Appellants neither support their general claims about interference with citizens' federal due-process or equal-protection rights with authority, nor do they offer any insights into the manner in which Section 35 or the rules TAIP has promulgated infringe these Fourteenth Amendment rights. We

rely on *Padilla*'s holding that the school district's failure to grant the complaining employees an appeal to the school board did not chill the complainants' First Amendment rights, did not invoke due-process concerns, and did not deny the employees equal protection of the laws. *Padilla*, 709 S.W.2d at 705. Hence, we overrule appellants' general federal constitutional challenges to Section 35.

 The Board also argues that the delegation of authority for the assigned risk plan is illegal because (1) TAIP is composed of private parties, and (2) Section 35 provides insufficient standards or safeguards to protect against the agency's arbitrary exercise of power. We disagree. The delegation of authority to private entities may be lawful if the legislative purpose is discernible and there is protection against the arbitrary exercise of power. *See* Kenneth C. Davis, *Treatise on Administrative Law* § 3:15(a) (2d ed. 1978 & Supp.1982). The legislative policy underlying the assigned risk plan is established by the statute: to provide for the equitable distribution of high risk applicants among all insurance companies doing business in Texas. The state regulatory agency, the Board, has power to approve or veto the plan rules of operation and to determine appropriate rates and policy forms.[8] We conclude that this statutory scheme establishes reasonable standards to guide TAIP in its rulemaking and sufficient safeguards against its arbitrary exercise of power. *See Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex.1992). Indeed, we conclude that the safeguards are sufficient for a delegation of power to private parties. *See Prudential Property & Casualty Co. v. Insurance Comm'n*, 534 F.Supp. 571, 580

(D.S.C.1982), *aff'd*, 699 F.2d 690 (4th Cir. 1983).

Finally, appellants allege that Section 35 and the plan rules adopted by TAIP and approved by the Board violate the Insurance Code or section 11 of the Administrative Procedure and Texas Register Act, Tex.Rev. Civ.Stat.Ann. art. 6252–13a, § 11 (West Supp.1993). Appellants do not, however, support these bare allegations with authority, and we conclude they are without merit.

Having considered and rejected all of appellants' challenges to the constitutionality and validity of the assigned risk insurance statute, we overrule OPIC's second point of error and those portions of the Board's first and second points of error that attack Section 35 or the plan rules as interpreted by the district court.

## COMPOSITION OF THE GOVERNING COMMITTEE

The district court granted summary judgment declaring that article 1.35C of the Insurance Code, requiring public membership on advisory bodies, does not apply to the TAIP governing committee.[9] Under its two points of error, the Board challenges this holding. In its third point of error, OPIC complains that the ruling is an impermissible advisory opinion because the district court found the Board had no jurisdiction to issue Order No. 59722–B.

 With regard to the Board's challenge, we agree with the district court's determination that the Board has no authority to appoint the governing committee of TAIP. As the Board conceded in its brief and at oral argument, if the Board has no such authority, article 1.35C does not apply. We also

---

**8.** Section 35 gives the Board authority to set rates and approve forms, in addition to approving the rules of operation:

> The State Board of Insurance, in addition to the provisions prescribed by Subchapter A, Chapter 5, Texas Insurance Code of 1951, as amended, may determine, fix, prescribe, promulgate, change, and amend rates or minimum premiums normally applicable to a risk so as to apply to any and every assignment such rates and minimum premiums as are commensurate with the greater hazard of the risk, considering in connection therewith the

experience, physical or other conditions or such risk of the person or municipality applying for insurance under any such plan.

**9.** This article provides:

> At least one-half of the membership of each advisory body appointed by the board or the commissioner, other than an advisory body whose membership is determined by this code or by another law relating to the business of insurance in this state, must represent the general public.

Tex.Ins.Code Ann. art. 1.35C (West Supp.1993).

note that, after September 1, 1993, the composition of the governing committee will be determined by another portion of the Insurance Code, amended article 21.81.[10]

We next consider OPIC's complaint that this portion of the district court's judgment is advisory. TAIP sought a declaratory judgment, asking the court to determine that the Board's order exceeded its statutory authority, that the assigned risk statute and the plan rules at issue were valid, and that article 1.35C did not apply to TAIP's governing committee. The district court's jurisdiction to respond to the request for declaratory judgment did not depend on the Board's "jurisdiction," nor did the district court's order address jurisdiction. Rather, the district court ruled that the Board's order exceeded its statutory authority. The court's statutory interpretation of Section 35 did not deprive the district court of its authority to interpret Insurance Code article 1.35C as well in this request for declaratory judgment. We overrule OPIC's third point of error and those portions of the Board's points of error that attack the district court's interpretation of article 1.35C.

## CONCLUSION

Concluding that the district court did not err in rendering summary judgment in favor of TAIP, we overrule all of appellants' points of error. Because we conclude there was no error, we do not reach TAIP's two cross-points on appeal. We affirm the district court's judgment.

POWERS, J., not participating.