Hopkins v. UT Bd. of Regents 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00293-CV







Virginia Hopkins, Appellant



v.



University of Texas Board of Regents and Bernard Rapoport,


in His Official Capacity, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT


NO. 94-01238, HONORABLE MARGARET COOPER, JUDGE PRESIDING








 Appellant Virginia Hopkins sued the University of Texas Board of Regents
("Board") and Board president Bernard Rapoport in his official capacity (collectively "UT")
seeking to require UT to permit her to address the Board orally at one of its meetings. The trial
court granted summary judgment for UT. On appeal, Hopkins argues in a single point of error
that the Texas Constitution gives her an absolute right to appear before the Board. We will
affirm.



FACTUAL AND PROCEDURAL BACKGROUND


 Until 1993, Hopkins was a nontenured faculty member of the School of Nursing
at the University of Texas Medical Branch ("UTMB") in Galveston. In the fall of 1991, Hopkins
applied for tenure. On January 31, 1992, she was told by her dean that her application for tenure
was denied. On March 27, 1992, Hopkins filed a grievance with Dr. George T. Bryan, Vice
President of Academic Affairs, and certain designated administrative officers in charge of tenure
decisions. The record before this Court does not show what response, if any, Dr. Bryan's group
made to Hopkins's grievance. Hopkins's petition does state, however, that she "grieved her
denial of tenure and exhausted her administrative remedy."

 On December 15, 1992, Hopkins requested that the Chairman of the Board of
Regents, Louis Beecherl, schedule an appearance before the Board to discuss her employment
concerns. This request was denied by the Board on January 5, 1993. Hopkins then brought this
mandamus action.



DISCUSSION


I.  Independent Summary-Judgment Ground Not Challenged on Appeal

 UT's motion for summary judgment was based on two grounds: (1) the Texas
Constitution did not create the right that Hopkins sought to enforce; and (2) the suit violated the
principle of sovereign immunity. In its order, the district court did not specify any ground on
which it granted summary judgment. When an order granting summary judgment does not specify
any of multiple independent grounds asserted in the motion, the nonmovant on appeal must show
that each ground asserted in the motion is insufficient to support the order. Rogers v. Ricane
Enters., Inc., 772 S.W.2d 76, 79 (Tex. 1989).

 In the present appeal, however, Hopkins does not challenge UT's sovereign-immunity ground, either by point of error or by argument. Accordingly, she has not shown error
in the granting of the summary judgment.


[P]laintiff has failed to show error in granting the motion for summary judgment,
since the judgment does not state the ground on which it was granted and plaintiff's
brief on appeal does not attack all the grounds stated in the motion. . . . [Plaintiff]
does not . . . attack any of several other independent grounds asserted in the
motion. We have no duty to examine and research these grounds without the
assistance of counsel so as to determine whether any of them are supported by the
record and by applicable rules of law. Consequently, . . . we hold that no
reversible error is shown.



Thomson v. Norton, 604 S.W.2d 473, 476-77 (Tex. Civ. App.Dallas 1980, no writ); see also
Malooly Bros., Inc. v. Napier, 461 S.W.2d 119, 121 (Tex. 1970); Tindle v. Jackson Nat'l Life
Ins. Co., 837 S.W.2d 795, 801 (Tex. App.Dallas 1992, no writ). Therefore, Hopkins's point
of error must be overruled.



II.  Merits of Constitutional Claim

 Even if Hopkins had refuted UT's sovereign-immunity claim, however, we would
still affirm the trial court's judgment. Hopkins argues that pursuant to Article 1, section 27 of
the Texas Constitution, she has a constitutional right to present her grievance orally to the Board
of Regents. Hopkins misconstrues the rights afforded by that provision, which states:



The citizens shall have the right, in a peaceable manner, to assemble together for
their common good; and apply to those invested with the powers of government
for redress of grievances or other purposes, by petition, address or remonstrance.



Tex. Const. art. 1, § 27.

 There is a paucity of authority construing the foregoing provision. In Corpus
Christi Independent School District v. Padilla, 709 S.W.2d 700 (Tex. App.Corpus Christi 1986,
no writ), non-contractual employees of a school district complained of interference with their
constitutional right of remonstrance because the district's grievance procedures did not afford
them an appeal to the school board. Acknowledging that "a citizen's right to approach an elected
official or body cannot be abridged," the court held that this right only guarantees "access to the
government's ear," not a favorable response. Id. at 704-705. The court held that Article 1,
section 27 did not mandate creation of a grievance procedure for citizens to vent their complaints
to the Board. Id. at 704. The court also stated that although the board had provided an open
forum, it was not required to do so. Id. at 705.

 Hopkins argues that Professional Association of College Educators(PACE) v. El
Paso County Community District, 678 S.W.2d 94 (Tex. App.El Paso 1998, writ ref'd n.r.e.),
in which the court held that the government "must stop, look, and listen to citizens' grievances," 
entitles her to address the U.T. Board of Regents. Id. at 96. In PACE, an unincorporated
association of college professors filed a written remonstrance with the board of trustees. PACE
wanted the board to hear their concerns about proposed changes in the official policies concerning
tenure of faculty. The board in PACE admitted that they had never even considered PACE's
remonstrance.

 In the present case, Hopkins' grievance was presented to the UTMB Vice President
of Academic Affairs. Unlike Pace, there is nothing in our record indicating that this official
failed to consider and act on her grievance. Accordingly, the issue here is whether those in
authority at the component-institution level (here UTMB) can be equated with what PACE called
"the government." 

 In Office of Public Insurance Counsel(OPIC) v. Texas Automobile Insurance Plan,
860 S.W.2d 231 (Tex. App.Austin 1993, writ denied), this Court held that the Texas
Constitution guarantees its citizens the right to present their grievances to "those invested with
authority." Id. at 236. We concluded that "those invested with authority" meant those who were
statutorily authorized to act. Id. There, a state statute authorized The Texas Automobile
Insurance Plan ("TAIP") to make and amend rules to the "Automobile Insurance Plan for the State
of Texas," subject to the approval of the State Board of Insurance. OPIC insisted that its inability
to appeal directly to the Board of Insurance to propose rule changes infringed upon a consumer's
right of remonstrance guaranteed by Article 1, section 27 of the Texas Constitution. Id. at 235-236. This Court disagreed, holding that TAIP, not the Board of Insurance, was the agency
invested with authority. Id.at 236. Because OPIC had access to the governing body that makes
the rules, TAIP, we concluded that Article 1, section 27 had not been violated. Id.

 In the present case, Hopkins, like OPIC, had the opportunity to air her grievances
with those "invested with authority." The Texas Education Code provides:



The board [of regents of the University of Texas System] has authority to
promulgate and enforce such other rules and regulations for the operation, control,
and management of the university system and the component institutions thereof
as the board may deem either necessary or desirable . . . .



Tex. Educ. Code Ann. § 65.31(c) (West 1991). Pursuant to its statutory authority, the Board
promulgated a set of "Rules and Regulations of the Board of Regents of the University of Texas
System for the Government of the University of Texas System" (hereinafter "Rules and
Regulations"). Section 6 of the Rules and Regulations, titled "Tenure, Promotion, and
Termination of Employment," provided that "the principles governing tenure and promotion are
specified for each component institution in the Handbook of Operating Procedures applicable to
that institution." The relevant section of the UTMB Handbook of Operating Procedures provides
that approval of the President, System Administration, and the Board of Regents will be sought
only if tenure is recommended by the Appointment, Promotion, and Tenure Committee, the Dean,
and the Vice President of Academic Affairs. Thus, the designated officers of UTMB, not the UT
System Board of Regents, are authorized to deal with tenure decisions. Therefore, Hopkins had
the opportunity to file a grievance with those "in authority." As in OPIC, just because the Board
has final approval power does not mean that it is the only one with authority.

 Moreover, we conclude that under the circumstances of this case, delegating certain
responsibilities to the component institutions is not merely convenient, but essential. It is
reasonable for the Board to have concluded that the decision to grant or deny tenure is one such
responsibility. The component institutions know best what their needs are concerning tenure of
professors. Although the Board has final approval power over the recommendations of a
component institution to grant tenure, it does not involve itself with the general underlying tenure
process and does not even have veto power over an institution's decision to deny tenure. An
obviousalthough not necessarily exclusivereason why the Board involves itself at all in the
tenure process is that granting tenure adds a financial obligation to the System.

 Finally, allowing all employees the opportunity to "address" the Board orally, as
Hopkins wishes, is simply impractical. Hopkins states that she is not asking the Board to
negotiate with her, nor is she asking for a response; she simply wants to voice her complaint. 
Granting such action, however, and thus opening the door to the Board to other employees, would
severely undermine the overall ability of the Board to function. The University of Texas System
is comprised of fourteen component institutions. It employs in excess of 1000 employees. The
Board of Regents could not properly function if it had to make decisions over all matters facing
the individual institutions. Surely the framers of the Texas Constitution never envisioned such
an expansive use of the "petition, address, or remonstrance" provision as Hopkins asserts. It is
reasonable to leave such grievances to the component-institution level.



CONCLUSION


 We affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith

Affirmed

Filed: February 21, 1996

Do Not Publish



ce, was the agency
invested with authority. Id.at 236. Because OPIC had access to the governing body that makes
the rules, TAIP, we concluded that Article 1, section 27 had not been violated. Id.

 In the present case, Hopkins, like OPIC, had the opportunity to air her grievances
with those "invested with authority." The Texas Education Code provides:



The board [of regents of the University of Texas System] has authority to
promulgate and enforce such other rules and regulations for the operation, control,
and management of the university system and the component institutions thereof
as the board may deem either necessary or desirable . . . .



Tex. Educ. Code Ann. § 65.31(c) (West 1991). Pursuant to its statutory authority, the Board
promulgated a set of "Rules and Regulations of the Board of Regents of the University of Texas
System for the Government of the University of Texas System" (hereinafter "Rules and
Regulations"). Section 6 of the Rules and Regulations, titled "Tenure, Promotion, and
Termination of Employment," provided that "the principles governing tenure and promotion are
specified for each component institution in the Handbook of Operating Procedures applicable to
that institution." The relevant section of the UTMB Handbook of Operating Procedures provides
that approval of the President, System Administration, and the Board of Regents will be sought
only if tenure is recommended by the Appointment, Promotion, and Tenure Committee, the Dean,
and the Vice President of Academic Affairs. Thus, the designated officers of UTMB, not the UT
System Board of Regents, are authorized to deal with tenure decisions. Therefore, Hopkins had
the opportunity to file a grievance with those "in authority." As in OPIC, just because the Board
has final approval power does not mean that it is the only one with authority.

 Moreover, we conclude that under the circumstances of this case, delegating certain
responsibilities to the component institutions is not merely convenient, but essential. It is
reasonable for the Board to have concluded that the decision to grant or deny tenure is one such
responsibility. The component institutions know best what their needs are concerning tenure of
professors. Although the Board has final approval power over the recommendations of a
component institution to grant tenure, it does not involve itself with the general underlying tenure
process and does not even have veto power over an institution's decision to deny tenure. An
obviousalthough not necessarily exclusivereason why the Board involves itself at all in the
tenure process is that granting tenure adds a financial obligation to the System.

 Finally, allowing all employees the opportunity to "address" the Board orally, as
Hopkins wishes, is simply impractical. Hopkins states that she is not asking the Board to
negotiate with her, nor is she asking for a response; she simply wants to voice her complaint. 
Granting such action, however, and thus opening the door to the Board to other employees, would
severely undermine the overall ability of the Board to function. The University of Texas System
is comprised of fourteen component institutions. It employs in excess of 1000 employees. The
Board of Regents could not properly function if it had to make decisions over all matters facing
the individual institutions. Surely the framers of the Texas Constitution never envisioned such
an expansive use of the "petition, address, or remonstrance" provision as Hopkins asserts. It is
reasonable to leave such grievances to the component-institution level.



CONCLUSION


 We affirm the trial court's judgment.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and B. A. Smith