TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00307-CV






City of Austin, Appellant


v.


Eli J. Garza and Provident Realty Advisors, Inc., Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. 97-12434, HONORABLE PETE LOWRY, JUDGE PRESIDING





O P I N I O N




 This case concerns the development of commercial property over the Barton Creek
Watershed. Eli Garza applied for and was granted the right to develop property in what was once
known as the Garza Ranch in the Barton Creek Watershed. The City of Austin ("City") subsequently
refused to allow development to proceed under the terms set out in the final and approved
subdivision plat. The City disputed the validity of one of the notes contained in the plat, which
would have allowed up to seventy percent impervious cover under certain circumstances. Garza
sought and obtained a judicial declaration that development could proceed pursuant to the
subdivision plat notes. In finding in Garza's favor, the trial court upheld the validity of the disputed
plat note on various equitable and legal grounds. Because we agree with the trial court's conclusions
of law, we affirm. 

STATEMENT OF FACTS


 On February 21, 1991, the City passed Ordinance Number 910221-E, the "Interim
Ordinance." (1) The Interim Ordinance was a temporary amendment to the Comprehensive Watershed
Ordinance ("CWO") and reduced the permissible amount of impervious cover (2) a commercial
developer could lay from up to seventy percent to eighteen percent. (3) On March 1, 1991 and during
the effective period of the Interim Ordinance, Garza filed an application for approval of a subdivision
plat covering approximately thirty-five acres at the intersection of Mopac and William Cannon in
south Austin. The City Planning Commission ("Commission") approved the plat on May 7, 1991. 
The plat was recorded on September 11, 1991 and contained the following notes:


 6. This subdivision shall be developed, constructed and maintained in accordance
with the terms and conditions of Chapter 13-2, Article V, and chapter 13-7,
Article V, dated June 1, 1988. (4)


. . . .


10. Block E Lot 2 and Block A Lot will be deeded to the City of Austin as an
extension of the Williamson Creek Greenbelt. This dedication will take place
prior to or simultaneously with final plat approval.



(Emphasis and footnote added). Plat Note 11 dealt with the transfer of impervious cover credits and
contained a table with two main columns--one marked "DONATING TRACTS" and the other
"RECEIVING TRACTS. The "donating tracts" were Lots 1 and 2 of Block A and Lot 2 of Block
E (Plat Note 10 above) containing 46,574 square feet. The 46,574 donated square feet was
transferred to and allocated between the "receiving tracts," which were Lots 1, 2, 3 and 4 of Block
B, and Lots 1 of Blocks C, D and E. (5) 

 In 1997, Garza contracted to sell some of the "receiving tracts," Lots 1, 3 and 4 of 
Block B, approximately five-and-one-half acres, to Gordon Dunaway, Provident Realty Advisors,
Inc. Closing was contingent upon obtaining a Consolidated Site Development Permit from the City. 
The City rejected the application because it did not conform to the Interim Ordinance. (6)

 Garza filed suit, which Provident later joined, seeking a declaratory judgment that the
provisions of the CWO governed the development of the subdivision and not the Interim Ordinance. 
The City argued that the inclusion of the date in Plat Note 6 was at best a mistake, and at worst
Garza's deliberate attempt to circumvent the Interim Ordinance. Garza argued that the Commission
had the authority to and did authorize the plat with the date reflected in the note. Garza also cited
section 245.002(d) of the Local Government Code, which would allow him to develop pursuant to
the regulatory scheme indicated in the recorded subdivision plat. The City claimed that section was
unconstitutional. Garza also contended that any procedural defects in approving his subdivision
map, for example, the failure to receive a formal variance, was validated by Vernon's Annotated
Texas Civil Statutes of the State of Texas, articles 974d-39, 974d-40 and 974d-44 (the "Validation
Statutes"). (7) The Validation Statutes provide that "governmental acts and proceedings of a
municipality since adoption or attempted adoption of the charter are validated as of the dates on
which they occurred." See West End Pink, Ltd. v. City of Irving, 22 S.W.3d 5, 8 (Tex. App.--Dallas
1999, pet. denied). The purpose for the Validation Statutes is to "give effect to an ordinance passed
in good faith, but plagued by some procedural or minor defect." See City of Murphy v. City of
Parker, 932 S.W.2d 479, 485 (Tex. 1996). "They are not intended to put the Legislature's stamp of
approval on otherwise void enactments." Id. The City asserted that the defect was not procedural
but substantive thus not subject to the Validation Statutes. Garza also questioned, under equitable
estoppel principles, whether it would be fair for the City to deny the enforceability of Plat Note 6
after having accepted his donation of land as shown in Plat Note 10. The City's position was that
municipalities, in general, were not subject to estoppel when exercising their regulatory power over
land use. According to the City, regardless of the source of the mistake, the City could not now be
bound by it. 

 The trial court ruled in Garza's favor and issued the following conclusions of law. 
First, Garza's dedication and the City's acceptance constituted a substantial benefit to the City, and
estopped the city from repudiating Plat Note 6. Second, the Commission had authority to approve
all the notes found in Garza's plat, thus Garza was entitled to have his site plan application reviewed
and approved under the CWO per Plat Note 6. Third, Section 245.002(d) of the Government Code
allowed Garza, as a "permit holder," to enforce the recorded Plat Notes against the City. Fourth, the
Interim Ordinance could not be applied to the Garza property after October 1991 because, by its own
terms, and from its inception, was intended to expire, and did expire, in October 1991. Fifth, any
defects that occurred in the process of approving the plat were validated. The trial court also
awarded Garza attorney's fees.

 The City disputes each of these conclusions of law on appeal and requests that we
reverse the award of attorney's fees.


STANDARD OF REVIEW


 Declaratory judgments are reviewed under the same standards as other judgments and
decrees. See Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 1997). The trial court's 
conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory
supported by the evidence. See Westech Eng'g, Inc. v. Clearwater Constructors, Inc., 835 S.W.2d
190, 196 (Tex. App.--Austin 1992, no writ). Because we find two independent legal theories by
which to support the trial court's judgment, we affirm and address only those two grounds.


DISCUSSION


Constitutionality of section 245.002(d)

 The City argued at trial and on appeal that section 245.002(d) was an unconstitutional
delegation of authority to private actors. Section 245.002(d) reads:


Notwithstanding any provision of this chapter to the contrary, a permit holder may
take advantage of recorded subdivision Plat Notes, recorded restrictive covenants
required by a regulatory agency, or a change to the laws, rules, regulations, or
ordinances of a regulatory agency that enhance or protect the protect, including
changes that lengthen the effective life of the permit after the date the application for
the permit was made, without forfeiting any rights under this chapter. 



Tex. Loc. Gov't Code Ann. § 245.002(d) (West Supp. 2003).

 The City argues that section 245.002(d) 


allows developers like Garza, in addition to the locked-in right to develop the project
under regulations in place when the initial application is filed, to cherry-pick what
other regulations will govern development of his project. Rather than applying the
comprehensive set of regulations in effect at the time of the first application, section
245.002(d) allows a developer to pick and choose bits and pieces of other
development regulation passed over time to compile his own 'set' of applicable
regulations. By granting developers that authority to compile their own set of rules,
§ 245.002(d) unconstitutionally delegates governmental authority to private actors. 


. . . .


Under the language of § 245.002(d), there is a delegation of governmental authority
to private actors here, because no set regulatory scheme applies to projects. Rather,
the developers get to pick and choose what regulations will apply to their project over
time. That ability to decide what rules apply is a delegation of governmental
authority.



 In reviewing the constitutionality of Section 245.002(d), we apply several well-settled
principles. If possible, we are to construe a statute in a manner that renders the statute constitutional
and to give effect to the Legislature's intent. Texas Mun. League Intergovernmental Risk Pool v.
Texas Workers' Comp. Comm'n, 74 S.W.3d 377, 381 (Tex. 2002). "We presume that the Legislature
intended for the law to comply with the United States and Texas Constitutions, to achieve a just and
reasonable result, and to advance a public rather than a private interest." Id. A presumption exists
that the legislative body has acted within its power. See Patterson v. Dallas, 355 S.W.2d 838, 841
(Tex. Civ. App.--Dallas 1962, writ ref'd n.r.e.). We should construe statutes in a manner avoiding
serious doubt of their constitutionality. See Federal Sav. & Loan Ins. Corp. v. Glen Ridge I Condos.,
Ltd., 750 S.W.2d 757, 759 (Tex. 1988) (citing Commodity Futures Trading Comm'n v. Schor, 478
U.S. 833, 840 (1986)). The Legislature, however, may not authorize an action that our Constitution
prohibits. See Texas Mun. League, 74 S.W.3d at 381. Were serious doubts to arise, we are to
determine whether a construction of the statute is "fairly possible" to avoid the constitutional
question entirely. See id. The party challenging a statute has the burden is to prove its
unconstitutionality. See Walker v. Gutierrez, 111 S.W.3d 56, 66 (Tex. 2003). Article III, (8) Section
1 of the Texas Constitution vests in the Legislature the power to make laws and determine public
policy. See FM Props. Operating v. City of Austin, 22 S.W.3d 868, 873 (Tex. 2000). The
Legislature can delegate authority to private entities "'if the legislative purpose is discernible and
there is protection against the arbitrary exercise of power.'" See Proctor v. Andrews, 972 S.W.2d
729, 735 (Tex. 1998) (quoting Office of Pub. Ins. Counsel v. Texas Auto. Ins. Plan, 860 S.W.2d 231,
237 (Tex. App.--Austin 1993, writ denied). 

 Our first inquiry necessarily must be whether there has been, in fact, a delegation of
legislative powers. The City challenges the constitutionality of the delegation at issue here because
the delegation allows the developer to "pick and choose what regulations will apply to their project
over time." (9)

 Section 245.002(d) allows a "permit holder" (10) to "take advantage of recorded
subdivision Plat Notes . . . ." See id. § 245.002(d). (11) By contrast, section 245.002(a) requires
regulatory agencies to consider only the "orders, regulations, ordinances, rules, expiration dates, or
other properly adopted requirements in effect at the time the original application for the permit is
filed." See id. § 245.002(a). In effect, paragraph (d) allows a property owner to elect between
developing pursuant to the notes within the subdivision plat or pursuant to the regulatory scheme in
effect at the time the owner originally filed for a permit.

 The issue is whether in allowing private parties the choice to develop their property
under (1) the regulatory scheme in place at the time they originally filed the application to subdivide
or (2) the regulatory scheme at set out in their final and approved subdivision plat the legislature has
delegated its power to create laws? We think not. 

 In FM Properties Operating v. City of Austin, the Texas Supreme Court held that a
statute that allowed private landowners to create their own water quality regulations and exempt
themselves from the applicable regulations was a delegation of legislative powers. See 22 S.W.3d
at 875. The statute allowed private landowners, owning 500 contiguous acres or more, to designate
their property as "water quality protection zones." See id. at 870. The legislature intended the
statute to relieve certain landowners from municipal "regulatory chaos." See id. Landowners
designating 500 to 1000 acres had to seek approval for their water quality plan with the Texas
Natural Resource Commission ("TNRCC") while landowners designating more than 1000 acres
were not required to seek TNRCC pre-approval. See id at 871. In addition to complying with state
and federal law, a plan had to conform with one of two general objectives: (1) maintaining
background levels of water quality in waterways; or (2) capturing and retaining the first 1.5 inches
of rainfall from developed areas, plus state and federal law. See id. Once designated, the water
quality zones were not subject to municipal land and water use regulations. See id. at 872. The
supreme court held the statute unconstitutional on the grounds it delegated legislative power to
private landowners by allowing them to decide whether and how to create their own water quality
regulations, make their own rules, "ascertain conditions upon which the statute may operate," and
"exempt themselves from the enforcement of municipal regulations.". See id at 876.

 The supreme court went on to make a key distinction that we believe is conclusive
on the delegation issue before us. In addressing the dissent, the majority distinguished delegations
which allow private parties "to choose between two distinct regulatory schemes" versus delegations
which allow private parties "to create part of the regulatory scheme that they choose." See id. at 879
(emphasis in original). Here, the Legislature has allowed a private landowner to choose between two
regulatory schemes: the one applicable at the time of the original application to subdivide and the
one indicated in the subdivision plat. The landowner does not create either regulatory scheme--both
were the product of the City's lawfully delegated power to regulate land use. The developer is held
to an election between two regulatory schemes. While, in some respects, the developer is allowed
to "ascertain conditions upon which existing laws may operate," the choice is limited to one of two
regulatory schemes created pursuant to a municipality's lawfully delegated authority. Because
section 245.002(d) allows the developer to choose between two distinct regulatory schemes but does
not allow the developer to create the scheme, it is not a delegation of legislative power. See id. at
870.

Estoppel

 We hold that a second independent legal basis supports the trial court's judgment. 
The trial court held that the city was estopped from denying the validity of Plat Note 6 because the
City had accepted Garza's dedication of property. In reply, appellant argues that a municipality may
not be estopped in the exercise of its governmental functions. See City of Hutchins v. Prasifka, 450
S.W.2d 829, 836 (Tex. 1970); City of Corpus Christi v. Gregg, 289 S.W.2d 746, 750 (Tex. 1956);
City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308, 309 (Tex. 1936); see also City of San
Marcos v. R.W. McDonald, 700 S.W.2d 674, 676 (Tex. App.--Austin 1985, no writ). The general
rule urged by appellants has an exception where a city has received a substantial benefit as a result
of its own mistake. In City of San Angelo, Deutsch loaned money to a third party who gave Deutsch
a note and deed of trust on the property. See 91 S.W.2d 308. Before making the loan, though,
Deutsch checked the county tax records for tax liens on the property. See id. Finding none, Deutsch
made the loan. See id. Upon default by the borrower, Deutsch realized the county tax records were
wrong and that the property was encumbered by unpaid taxes. See id. at 309. Deutsch argued that
the city was estopped from asserting a claim for the unpaid taxes because of his reliance upon the
city's error. See id. The supreme court held that a city could not be estopped by the negligence of
its officials in the exercise of its governmental function when the city has received no benefit from
the error. 


The opinion is expressed in a number of decisions that a city may be estopped even
when it is acting in its public [governmental] capacity if it has received or accepted
benefit from the transaction . . . . In such case exception is properly made to the
general rule which has been discussed, because there is added to the equities existing
in favor of the individual on account of his reliance and injury the established and
compelling equitable principle that the city may not, after having accepted benefit
from the unauthorized act, repudiate it so far as it imposes an obligation upon it or
is disadvantageous to it. Doty v. Barnard, 92 Tex. 104, 107, 47 S.W. 712; 17 Tex.
Jur. pp. 135, 136, s 7. This exception is not applicable here because the city received
no benefit from the unauthorized entries made in the tax records.



See id. at 311-12 (citations omitted). In Doty v. Barnard, the supreme court said "A person cannot
accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions
in another part," 92 Tex. 104, 47 S.W. 712, 713-14 (Tex. 1898) (quoting Herman on Estoppel and
Res Judicata). Again, this exception to the general rules applies even where the city is acting in its
governmental capacity. See Deutsche, 91 S.W.2d at 312; Gregg, 289 S.W.2d at 750-51; see also
Robert v. Haltom City, 543 S.W.2d 75, 80 (Tex. 1976) ("The court's equitable power to prevent
injustice must not be frustrated by rules of law that limit or preclude the responsibility of the city for
the conducts of its officers."). While we acknowledge that the applicability of estoppel against
municipalities is rare, we conclude that it would be manifestly unjust for the City to retain the
benefits of its mistake yet avoid its obligations. The City argues that Garza is prohibited from
developing his property pursuant to the Plat Notes because the Commission had no authority to
approve a subdivision plat that did not conform to the applicable land use regulations in place at the
time the application to subdivide was filed. However, we find that it would be manifestly
inequitable for the City to retain the land Garza donated so that he could take advantage of transfer
credit provisions available only under the CWO and later deny him the benefit of developing under
the CWO. 

Attorney's Fees

 The City asks that we reverse the award of attorney's fees provided we find in their
favor. The award of attorney's fees is discretionary and cannot be reversed on appeal absent a clear
abuse of discretion. See Texas Dep't. of Pub. Safety v. Moore, 985 S.W.2d 149, 157 (Tex.
App.--Austin 1998, no pet.). A trial court abuses its discretion when it acts without regard to
guiding legal principles or supporting evidence. See Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex.
1998). Since we have affirmed the legal basis supporting the trial court's judgment, we affirm the
award of attorney's fees. See Steel v. Wheeler, 993 S.W.2d 376, 381 (Tex. App.--Tyler 1999, pet.
denied) (affirming the award of attorney's fees to the prevailing party in a declaratory judgment
action).


CONCLUSION


 There are two independent legal bases supporting the trial court's judgment in Garza's
favor. We hold that section 245.002(d)'s reference to "Plat Notes" does not create an
unconstitutional delegation of legislative power to a private entity. Further, we hold that the City
is estopped to deny the validity of Plat Note 6 because it accepted Garza's dedication of property. 
We affirm the trial court's judgment.



 

 David Puryear, Justice

Before Justice Kidd, Justices B. A. Smith and Puryear

Affirmed

Filed: December 18, 2003

1. The Interim Ordinance read in relevant part as follows: 


ORDINANCE NO. 910221-E

AN ORDINANCE ADOPTING INTERIM NON DEGRADATION
REGULATIONS FOR THE BARTON CREEK WATERSHED AND THE
WATERSHEDS CONTRIBUTING TO BARTON SPRINGS . . . . 


Part 1. Chapter 13-2 (Land use) Article V (Water Quality related Development
Intensities) of the Austin City Code of 1981 is hereby amended for an interim
period to read as provided in the attached Exhibit "A", incorporated herein as if
repeated verbatim. 


. . . .


Part 6. This ordinance shall automatically expire and have no effect on August
23, 1991.


. . . . 


DIVISION 5. Barton Springs and Contributing Zone


Sec. 13-2-584 UPLANDS ZONE


. . . . 



 Impervious cover shall be limited to the following:



 Maximum Impervious Cover (NSA)

Use Recharge Zone Non-Recharge Zone


. . . . 


Commercial 18% 30%


Sec. 13-2-585 TRANSFER OF DEVELOPMENT INTENSITY


There shall be no transfer of development within this zone. 
2. Impervious cover is defined as "the total horizontal area of covered spaces, paved areas,
walkways, and driveways." See Austin City Code § 25-1-23.
3. As indicated in note 1, the Interim Ordinance was effective February 21, 1991 through
August 23, 1991. The expiration date was later extended to October 27, 1991.
4. Chapter 13-2, Article V of the City Code deals with "Water Quality Related Development
Intensities. Chapter 13-7, Article V deals with "Environmental Protection and Management." With
the date, the Plat Note would seem to indicate that development would proceed under the CWO,
which was in effect on June 1, 1988.
5. Under a regulatory scheme which allowed a developer to take advantage of transfer credits,
the donation of property to the City effectively meant that Garza could increase the square footage
of the receiving tracts. For example, if a developer donated a 2,000 square foot lot to the City, the
developer could then, for purposes of determining impervious cover, add 2,000 square feet to the
total square footage of another lot. If the receiving lot were 4,000 square feet, without the donation,
the donation would enlarge that lot to 6,000 square feet for purposes of determining impervious
cover. For purposes of determining the percentages of impervious cover, then, one would use the
6,000 total lot size instead of the 4,000 square feet actual lot size. Impervious cover measuring 2,000
square feet would equate to 33% impervious cover, with the donation, and 50% impervious cover
without the donation.
6. According to state and local law, the regulatory scheme in place at the time Garza
originally filed his plan to develop, the Interim Ordinance, should have governed all subsequent
development undertaken pursuant to their application.
7. Act of June 16, 1991, 72d Leg., R.S., ch. 861, § 1, 1991 Tex. Gen. Laws 2964, repealed
by Act of May 22, 2001, 77th Leg., R.S., ch. 1420, § 12.111(5), 2001 Tex. Gen. Laws 4343; Act of
March 8, 1993, 73d Leg., R.S., ch. 6, § 1, 1993 Tex. Gen. Laws 15, repealed by Act of May 22,
2001, 77th Leg., R.S., ch. 1420, § 12.111(6), 2001 Tex. Gen. Laws 4343; Act of June 16, 1995, 74th
Leg., R.S., ch. 792, § 1, Tex. Gen. Laws 4144, Act of May 22, 2001, 77th Leg., R.S., ch. 1420, §
12.111(9), 2001 Tex. Gen. Laws 4343.
8. The Texas Supreme Court in Proctor distinguished between a legislative delegation under
Article II and Article III of the Texas Constitution. See 972 S.W.2d at 732-33. Section 1 of Article
II explicitly prohibits the Legislature from delegating its lawmaking power to the executive or
judicial branches. See id. at 733. Section 1 of Article III vests the power to make laws with the 
Legislature. See id. Both Articles II and III are at issue where the Legislature has delegated its
lawmaking authority to the other branches of government. See id. Only Article III is at issue where
the Legislature has made a delegation to a non-governmental entity.
9. A delegation of legislative powers occurs when a private entity is given the power (1) to
make rules, (2) determine public policy, (3) provide the details of the law, (4) promulgate rules and
regulations to apply the law, or (5) ascertain conditions upon which existing laws may operate. See
FM Properties, 22 S.W.3d at 873. As set out above, the City argued that allows developers like
Garza were allowed to "cherry-pick" between regulations thus compiling their own set of applicable
regulations. Their complaint, then, is not that Garza was allowed to make rules, determine public
policy, provide the details of the law or promulgate rules and regulations but that Garza was allowed
to "ascertain conditions upon which existing laws may operate."
10. A "permit" means a "license, certificate, approval, registration, consent, permit, or other
form of authorization required by law, rule, regulation, order, or ordinance that a person must obtain
to perform an action or initiate, continue, or complete a project for which the permit is sought." See
Tex. Loc. Gov't Code Ann. § 245.001(1) (West Supp. 2003).
11. We find it unnecessary to address whether section 245.002(d) in its entirety amounts to
an impermissible delegation of legislative powers. The relevant portion of section 245.002(d) deals
with "subdivision Plat Notes." Whether and to what extent the remaining portions of (d) are
unconstitutional is not relevant to this appeal. Were those portions of the statute unconstitutional,
our mandate would have been to strike those portions and save the remainder -- the remainder being
the section dealing with "subdivision Plat Notes." See Quick v. City of Austin, 7 S.W.3d 109, 115
(Tex. 1998).